**Exhibit A**
**Process, Pleadings and Orders**

IN THE SUPERIOR COURT OF HALL COUNTY
STATE OF GEORGIA

⚖ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
JASON J. DEAL
NOV 12, 2024 04:59 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

| | |
|---|---|
| MARK DOUGLAS FAUL, | : |
| ARROWQUEST SERVICES, Inc., | : |
| d/b/a MULBERRY SPRINGS | : |
| VINEYARD AND WINERY, ERIK | : |
| CONOLY, JAMIE PHILLIPS, JARED | : |
| MELENDEZ, KATIE MAUREEN | : |
| MELENDEZ, MIKE MORTON, LISA | : |
| MORTON, WILLIAM DOUCHER, EMILY | : |
| DOUCHER, JIM GRAFF, LAURA GRAFF, | : |
| NANCY WINSLOW, TOMMY | : |
| CHANNELL, LESLIE CHANNELL, | : |
| WAYNE DOWNEY,CAROLE DOWNEY, | : |
| BRETT BLACK, JAN BLACK, BRET | : |
| CESAK, AMBER CESAK, CAROLE | : |
| BRANUM, GREG EVERETT, KATHY | : |
| EVERETT, BEN TULE, DOUG HORSLEY,: | |
| JAKE TERRELL, HEATHER TERRELL, | : |
| WALT PIMENTEL and WHITNEY | : |
| PIMENTEL, | : |
| | : |
| Petitioners, | : |
| | : |
| | :  Civil Action File No. _____ |
| | : |
| HALL COUNTY AND THE HALL | : |
| COUNTY BOARD OF COMMISSIONERS,: | |
| RICHARD HIGGINS AS CHAIRPERSON, | : |
| AND BILLY POWELL, GREGG POOLE, | : |
| AND JEFF STOWE IN THEIR OFFICIAL | : |
| CAPACITIES, KATHY COOPER | : |
| AS MEMBERS OF THE | : |
| HALL COUNTY COMMISSION, AND | : |
| BETH GARMON ON HER CAPACITY | : |
| AS DIRECTOR OF PLANNING AND | : |
| ZONING OF HALL COUNTY, GEORGIA, | : |
| AND BUDDY STANLEY, GLORIA STANLEY, | |
| RANDY JONES, TRAVIS LEE LITTLE, | : |
| ROGER LITTLE, CATHY LITTLE, | : |
| ROGER R. LITTLE and TAMMY JONES, | : |
| | : |
| Respondents. | : |

Page 1 of 23

**APPEAL/PETITION FOR DE NOVO REVIEW TO SUPERIOR COURT
OF A ZONING DECISION
AND COMPLAINT AND REQUEST FOR DECLARATORY
JUDGMENT INJUNCTION, DAMAGES, AND OTHER RELIEF**

COME NOW, Petitioners, and for their Petition for a Ne Novo Review and Reversal of

the October 10, 2024 Zoning Decision of the Hall County Commissioners show as follows:

Petitioners named above, pursuant to O.C.G.A. § 36-66-5.1(a)(1)(d), hereby petition the

Superior Court of Hall County for review of the Zoning Decision, rendered by the Hall County

Board of Commissioners on October 19, 2024 which re-zoned 114.147 acres being 0, 4611, 4627

Guth Road, 0, 4561, 4613 JM Turk Road, and 4590, 4601 and 4610 Stanley Road in Hall County

from Agricultural Residential (AR-III) to Planned Residential Development.[1]  In addition, this is

an action for declaratory, injunction, damages, and other equitable relief brought pursuant to the

Fifth and Fourteenth Amendments to the Constitution of the United States and the Constitution

of the State of Georgia, the Hall County Comprehensive Plan, the Comprehensive Hall County

Land Development Ordinance, the Georgia Zoning Procedures Act, and the Hall County

Subdivision and Zoning Ordinances.   The Re -zoning complained of was for the purpose of the

construction of high density housing, including townhouses, pools, tennis courts, and other

amenities for a 256 unit residential development.

Petitioners claim that the re-zoning described above violates their State and Federally

Guaranteed Due Process Rights, amounts to an unconstitutional taking of valid property rights, to

---

[1]According to the Minutes of Hall County, Georgia the property is Tax Parcels 15043
00027, 000201, 000128, and 15044 000035, 1504 000127, 15043 000109 & 15044 000035B,
000043, 000100. The applicant was attorney Steve Gilliam.

Page 2 of 23

whit, their property values, their business and business income, their Constitutional rights of Equal Protection and their Section 1983 Equal Treatment rights.

Petitioners seek that have the re-zoning reversed and seeks both a temporary and permanent injunction as well as a Declaratory Judgment that the zoning decision appealed from is void.

## SUMMARY OF FACTS

Petitioners are adjacent and abutting property as well as owners in the immediate vicinity of the re-zoning who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of business and business income, loss of property values, heavy and congested traffic, and, as an adjoining and nearby landowners, Petitioners will suffer a substantial percentage decrease in the value of their properties and their property rights in their business in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, water run-off and visual intrusions on peace and privacy.

Petitioners know of no official transcript of the proceedings before the Hall County Planning and Zoning board or before the Hall County Commissioners although a video of the proceedings is believed to be available on the Hall County Government website.

### Applicable Standard of Review

### Under O.C.G.A. § 36-66-5.1(a)(1)(d)

In 2022 the Georgia Legislature adopted O.C.G.A. § 36-66-5.1 which was passed *"(t)o ensure that the general public is afforded due process in an orderly way to petition the courts for review of a local government's exercise of zoning, administrative, or quasi-judicial powers as guaranteed by Article I, Section I, Paragraphs IX and XII of the Constitution..."* O.C.G.A. §

36-66-5.1

The Act *"provides the following mechanism by which each of the powers described in this chapter may be reviewed by the superior court of the county wherein such property is located."* O.C.G.A. § 36-66-5.1

A de novo proceeding is specified in OCGA § 36-66-5.1 as the applicable standard of review for this type of case. Therefore, this Petition for Review seeks a de novo (new) review of the zoning decision: *"Challenges shall be by way of a de novo review by the superior court wherein such review brings up the whole record from the local government and all competent evidence shall be admissible in the trial thereof."* O.C.G.A. § 36-66-5.1.

## ADDITIONAL CLAIMS

Recent changes to the Georgia Zoning Procedures Act (O.C.G.A. § 36-66-5.1) and the recent passage of the Superior and State Court Appellate Practice Act (O.C.G.A. § 5-3-1 et seq) appear to have negated the necessity or assumed requirements of a person or persons appealing a county zoning decision to bring claims such as claims for mandamus, violations of constitutional rights, injunction or declaratory decree. *"The Act amends the zoning procedures law to clarify the process for challenging and appealing certain land use decisions. The Act codifies the longstanding appeals process for zoning decisions that existed prior to 2017 such that legislative zoning challenges will be reviewed de novo by a superior court."* ARTICLE: HB 1405: Amendments to the Zoning Procedures Law, 39 Ga. St. U.L. Rev. 125, 125.

However, in order to state their other claims and out of an abundance of caution to assure that the Applicant for the Zoning Change challenged herein has notice of this Petition and its contents, and to preserve the rights of the Petitioners the following counts and claims are made.

The facts alleged below are specifically incorporated so as to provide further factual and legal basis for the Petition for Review as well as the Counts below.

## FACTS

1.

This is a challenge and appeal of a zoning decision made by the The Hall County Board of Commissioners on October 10, 2024. The minutes of the meeting at which the Zoning Change was made is attached hereto as Exhibit "A."

2.

Respondents are subject to the jurisdiction of this Court because Respondents, Steve Gilliam's apparent clients, are the owners of land in Hall County who sought and obtained a zoning change and/or were the applicants in a request for such re-zoning. See Ex B which is a list of the Applicants for the Re-Zoning as shown on Hall County Commissioner's Public Records which includes their address for service of process if necessary. As for Respondents Hall County and the individual Hall County Defendants, Hall County has stated that they may served via the County Attorney.

3.

The Official Hall County Zoning Map as adopted, as well as the Hall County Code of Ordinances classified the property which is the subject of this action, as well as most nearby and adjacent property, as Agricultural Residential - III (AR-III). As a result of being so zoned a high density less than two acre lot, single or multi-family subdivision was not allowed.

4.

Petitioners own property adjacent to and in the immediate vicinity the subject re-zoned

property, have substantial interests in their property rights, and will suffer substantial damages, by reason of the contested zoning change.

5.

Specifically, Petitioner, Mark Faul, owns and operates a Georgia State Certified Agritourism venue with a farm, vineyard, residence, business offices, a wine tasting room, tours and other income producing amenities.

6.

As to petitioner, Mark Faul, he has a substantial interest in his business and his property because his properties which are large agricultural properties with fields, woods, quiet and privacy, a winery and a vineyard are adjacent to the subject property and will severely and irreparably harmed by the re-zoning.

7.

The re-zoning, according to the plans submitted to Hall County by the Applicants, will force Plaintiff's farm trucks, delivery trucks, tractors, and people working on the operations of the Plaintiff's winery to enter into the Applicants' subdivision, go through and past it's *"Entrance Monument,"* make a hard left turn where there was no turn before, and negotiate a neighborhood street in order to gain access to Petitioner's land, winery, vineyards and business.

8.

The obstacles described in 6. above and the resultants problems caused by the extremely high new traffic count caused by the re-zoning will result in a devastating loss of Petitioner's business.

9.

Petitioner, Mark Faul, who was granted approval to start a winery business by the Hall County Board of Commissioners on May 5, 2021, and has operated his winery business since April 15, 2023 has performed a study which shows he will lose over 50% of his business and income as the result of the re-zoning.

10.

Petitioner, Mark Faul, placed all Respondents on notice of his claim that the re-zoning will result in a taking of his property and property rights, amounting to a taking without just and adequate compensation being first paid, by, inter alia, having his attorney, Jane Range, place Hall County and the Hall County Commissioners on notice of the said constitutional claims. See Ex C.

11.

In addition to lost business and lost income, Petitioner, Mark Faul's interest will suffer special damage in the nature of loss of property values, chemical and water run-off, impaired traffic flow and noise, loss of peace and enjoyment, and other injuries not common to all property owners similarly situated because, inter alia, water and pollutants will run off from the subject property as a result of the large area to be developed, the homes, cars and other improvements to be built there, the entrances and roadways leading to the Petitioners' lands will be blocked and at times impassible. Petitioners' lands will lose a tremendous amount of value as quiet agricultural properties due to being adjacent to a dense subdivision.

12.

As to Petitioner, Erik Conoly, he owns a custom built home on twelve acres. His property value will significantly decrease due to being nearly completely surrounded by the

developed neighborhood. He will have approximately 30 homes surrounding him on two thirds of his property. The proposed homes in the development will be built on 1/8 of an acre, which is far less than the Hall County Master Plan that they made years ago which was that all homes were to be on nothing less than half an acre.

13.

As to Petitioner, Doug Horsley, he is a resident of Quailwood Subdivision and resides in Deer Creek Court. Although, he did receive notice in the mail of the zoning meetings related to the proposed zoning change, there were no signage notices in the neighborhood to alert others in Quailwood. A proposal of this nature will not only affect residents that back up to the property in question, but all residents of Quailwood. He has had the opportunity to observe Mulberry Creek during rainstorms. Behind his house, the creek swells to 15-20 feet wide during downpours and the erosion that already occurs is damaging to his property. The proposed development will exacerbate the problem further resulting in severe erosion of the banks of the creek Trees already in jeopardy of being uprooted will be the casualty causing a deterioration of the beauty which was part of the reason his home was purchased. In addition, retention ponds are notorious for significant mosquito problems and considering all the variances allowed in the approval of this development, there are no assurances that the pond will be maintained to eliminate the mosquito problems. When he purchased his home, he was surrounded by multi-acre homesites which gave him assurances as to future intrusion by subdivisions and now with the approved development it will greatly decrease the value of his property.

14.

As to petitioner, Ben Tule, he is also a resident of Quailwood as well as Doug Horsley

above. His property sees massive amounts of erosion from the creek being overwhelmed by heavy rains and the run off from such a densely built community will surely cause major ecological damage. The density of the homes are beyond what is allowed and the value of his property is now in jeopardy with the caliber of homes being squeezed in. The new development and retention ponds will increase the noise pollution and will harbor and become a breeding ground for mosquitoes.

15.

As to petitioners, Mike Morton and Lisa Morton, they own forty-three acres behind the proposed high density development that has been approved by Hall County. Their property will be negatively affected by the loss of trees which will adversely affect Mulberry Creek that runs on their property line. A high-density development will have a huge negative impact on their property value. The number of variances to get this development approved far exceeds the norm for any development and it does not meet the requirements of the Comprehensive Plan for Hall County.

16.

As to petitioners, William and Emily Doucher, Mr. Doucher is the homeowner association president of Elah Valley, a subdivision downstream from the proposed/approved development. They have experienced historical flooding in the past due to flooding of Mulberry Creek. The high density subdivision is expected to make the flooding much worse, due to steep topography in the area and the greatly increased impervious land created by the high density subdivision. The proposed development does not conform to the existing character and development patterns of the surrounding area, and does not preserve not protect existing

residential use from adverse impacts. This development will decrease their property value as this will be a high-density subdivision unlike a low- density higher quality housing development. Potential flooding from Mulberry Creek which has been a big issue for Elah Valley with earlier upstream development has resulted in significant expense to homeowners in Elah Valley and is expected to occur more with this development.

17.

As to petitioner, Jamie Philips, she is a property owner who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioner will suffer a substantial percentage decrease in the value of her property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

18.

As to petitioners, Jared Melendez and Katie Maureen Melendez, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

19.

As to petitioners, Jim Graff and Laura Graff, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage

decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

20.

As to petitioner, Nancy Winslow, she is a property owner who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioner will suffer a substantial percentage decrease in the value of her property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

21.

As to petitioners, Tommy Channell and Leslie Channell, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

22.

As to petitioners, Wayne Downey and Carole Downey, they are property owner s who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

23.

As to petitioners, Brett Black and Jan Black, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

24.

As to petitioners, Bret Cesak and Amber Cesak, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

25.

As to petitioner, Carole Branum, she is a property owner who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioner will suffer a substantial percentage decrease in the value of her property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

26.

As to petitioners, Greg Everett and Kathy Everett, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage

decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

27.

As to petitioners, Jake Terrell and Heather Terrell, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

28.

As to petitioners, Walt Pimentel and Whitney Pimentel, they are property owners who will suffer specially from the erroneous zoning decision for reasons including but not limited to loss of property value, heavy and congested traffic. Petitioners will suffer a substantial percentage decrease in the value of their property and in addition to damages in the form of noise, odor, mosquitos from excessive planned retention ponds, and visual intrusions on peace and privacy.

29.

In addition to the Notice of Constitutional Claims given to Respondents by Petitioner Faul, the following Petitioners also gave due and proper notice to Respondents of their Constitutional claims: Erik Conley and Kathleen Conley; Ben Tule; Doug and Diane Horsely; Jamie Phillips; Jake and Heather Terrel. A true and correct copy of their notice of their Constitutional claims is attached hereto as Ex D.

30.

The Hall County Commissioners committed or allowed the other Respondents to commit

the following errors and violations of the requirements of their own Ordinances and of The

Georgia Zoning Procedures Act:

1.  Respondents did not require the Applicants for the Zoning Change to submit
    detailed plans first to the Planning Commission as called for in the Hall County
    Development Ordinance.

2.  Respondents did not mail notice of the Planning Commission or County
    Commissioners hearings via first class mail to Petitioners as required by the Hall
    County Development Ordinance.

3.  Respondents posted notices on Stanley road and on Jm Turk Road, south of
    Stanley Road.  No signs were placed north of Stanley road, even though the
    Melendez property is impacted a few feet from Stanley Road . Respondents did
    not post notices on the property of Planning Commission or the County
    Commissioners hearings as called for in the Hall County Development Ordinance
    and as required by Georgia law.

4.  Any Notices placed on the property were placed far into the large acreage tract,
    were not sized appropriately and were not in a conspicuous place as required.

5.  In violation of their duty to inquire as to the uses to which the property would be
    put, The Planning Commission and the Hall County Board of Commissioners
    allowed the property to be re-zoned without any siltation or water or sediment
    run-off plan, without sufficiently detailed plans for driveways, entrances, utilities,

traffic impact studies, creek or stream buffers or setback information, delineation

of entries or exits or any other plans or specifics such that any interested party

would be able to ascertain what would be done on the subject property.

31.

The Hall County Board of Commissioners failed to carry out their duty as set forth in

their Ordinances and the Zoning Procedures Act to consider certain standards in adopting the

zoning change AND they took part in prohibited conflicts of interest:

1.    The zoning change was not suitable in light of the use and development in the

      adjacent and nearby property.  The Board failed to consider the impact to any

      nearby property.

2.    The zoning change will have an adverse impact on all nearby and surrounding

      property.  The Board of Commissioners failed to consider that the adjacent,

      nearby and surrounding uses of property are primarily agricultural with little or no

      high density development.

3.    The zoning change will have an adverse affect on the existing streets at and near

      the property location and is not in conformity the Hall County Comprehensive

      Plan or the existing or changing conditions in the area which are agricultural and

      low density housing.

4.    It was impossible for the Hall County Planning Commission or the Hall County

      Board of Commissioners to have considered the impact of the proposed zoning

      change on the adjacent and nearby property owners when they have never been

      provided with a topographic survey, a site plan, a plan showing unit locations, or a

Page 15 of 23

plan showing creek, lot line and road setbacks or silt containment plans.

5.    Commissioner, Kathy Cooper, was in a conflict of interest at the time the application was considered insofar as she was a real estate agent who stood to gain from the re-zoning.  While Commissioner Cooper abstained from voting, the abstention does not remove the conflict where personal gain is involved. This the conflict should void the zoning. <u>See</u> Montgomery v. Atlanta, 162 Ga. 534 (1926).

6.    State Minimum Fire Safety Standards with Modifications Georgia Administrative Code Department were ignored by the Commissioners. The standards state as follows:

   A.    Developments of one-or two- family dwellings where the number of dwelling units exceeds 120 shall be provided with two separate and approved fire apparatus access roads.  This was not done.

   B.    Where two fire apparatus access roads are required, they shall be placed in distance apart equal to not less than one-half of the length of the maximum overall diagonal dimension of the property or area to be served, measured in a straight line between accesses.  This was not done.

   C.    Thus the entrances need to be at least 1,838 feet from one another. They are not.

7.    The calculation of 2.2 homes per acre is inaccurate and underestimates the true density.  This calculation was used by Respondents and is erroneous.

8.    The alleged traffic analysis done by Respondents was flawed because it used old data, based on one day of data collection during an era of COVID when more

people worked at home.  Further, the traffic analysis did not consider the

estimated traffic from multiple approved subdivisions in the area and are under

construction.

32.

Hall County did not follow the guidelines outlined by the Supreme Court of the State of

Georgia and the Georgia Legislature for the consideration of the constitutionality of a zoning

ordinance as applied to real property and gave no weight to those guidelines in their deliberations

on the request for re-zoning of the Property.  In addition, in cases concerning improper notice,

which is to say, a denial of procedural due process, the courts have allowed challenges much

later, even years later.  Without due process required by law the re-zoning is void and can be

challenged at any time.  See Golden v. White, 253 Ga. 111, 316 S.E.2d 460 (1984).  However,

out of an abundance of caution, Plaintiffs are bringing this action (In the Golden case, it did not

matter that the persons bringing the due process challenge for lack of notice did not even live in

the area at the time of the re-zoning and could not possibly have received notice.  The court

found that re-zoning runs with the land and not the person, and if the notice was defective, the re-

zoning is defective).

33.

The Zoning decision appealed from appears not to be a true final decision, leaving both

the Petitioner and the parties seeking the zoning decision unsure of their rights.  The decision

leaves all parties unsure of whether the zoning was approved or not and should be overturned.

See Head v. DeKalb Co., 246 Ga.App. 756, 542 S.E.2d 176 (2000).  This deprives Petitioner of

the procedural due process set forth in both the Georgia Zoning Procedures Act and the Hall

County Ordinances. Petitioner is entitled to a declaratory judgment that the effect of the

Commissioners vote was to deny, rather than approve, the rezoning because the Applicant failed

to provide the requisite information in order for the Commission to make the decision.

## COUNT I

## SUBSTANTIVE DUE PROCESS AND TAKINGS CLAIMS

34.

Petitioner hereby incorporates all the above enumerated paragraphs as if stated verbatim.

35.

The application and the applicant for the zoning change is in violation of virtually all of

the objective County regulations, including but not limited to the State and County Zoning

Procedures and the County should be compelled to deny the zoning change.

36.

Because Hall County failed to consider the damage to Petitioners' property and

businesses they have and will be denied the full use and enjoyment of their property and of the

successful businesses they has operated thereon.

37.

In light of the facts set forth above, Respondents' actions with regard to the re-zoning and

the re-zoning application were arbitrary, capricious, irrational, a manifest abuse of discretion,

intentional, and a denial of Petitioners' rights to substantive due process guaranteed by the

Zoning Procedures Act, the State and Federal Constitutions and the Hall County Zoning

Ordinances.

38.

The re-zoning has and will take Petitioners' land and home values and business and income without a hearing and without notice and without just and adequate compensation. Thus, Respondents' re-zoning deprived Petitioners of constitutionally guaranteed property rights without payment of just and adequate compensation. Said actions constitute a violation of the rights and privileges secured by Petitioners by Article I, Section III, Paragraph I of the 1983 Constitution of the State of Georgia.

39.

Hall County should be required to answer in damages for the taking in an amount to be decided by the enlightened conscience of a fair and impartial jury.

40.

For the reasons set forth above, Hall County's re-zoning, absent the payment of just and adequate compensation, was unlawful, null, void and if no legal force or effect.

41.

The taking of the Petitioners valuable property rights is also a violation of the Due Process Clause of the Fourteenth Amendment to the Unites States Constitution.

**COUNT II**

**1983 Equal Protection Claim**

42.

Petitioner hereby re-alleges and incorporates all the above enumerated paragraphs as if restated verbatim.

43.

The Respondents' approval the unlawful zoning change will take value from the property

of the Plaintiffs and amounts to an unlawful taking of property in favor of other private citizens, to whit, the individual Applicants, which amounts to a denial and taking of Petitioners' property rights based upon discriminatory, irrational and unequal intent or purpose, and constitutes discrimination of Petitioners as opposed to Respondents' treatment of the Applicants all in violation of Article I, Section I, Paragraph I, and Article I, Section III, Paragraph I of the Georgia Constitution and the Fourteenth Amendment to the United States Constitution.

44.

Petitioners have been materially harmed by the Defendants' actions, their constitutional rights have been denied, they have been denied the lawful use of their property, their property right have been denied under color of law, depriving Petitioners of the full economic uses of their land in favor of the Applicants and they have been deprived of their property without first being paid just and adequate compensation under the Georgia Constitution while the rights and interests of the Applicants have been given priority over the Petitioner's rights. Petitioner is entitled to an injunction stopping the zoning change until such time as they are paid just and adequate compensation for the taking and until such time as Hall County provides them with Equal Protection under the State and Federal Constitutions.

**COUNT III**

**DAMAGES**

45.

Plaintiff re-alleges and incorporate by reference all the above enumerated paragraphs as if restated verbatim.

46.

Page 20 of 23

Hall County has unconstitutionally taken the property by arbitrarily and capriciously granting a zoning change to an adjacent property which will damage and destroy the value of the property and business owned by Petitioners even though the Applicants failed to meet any of the objective criteria for a zoning change, thus causing financial harm to the Petitioners.

47.

Therefore, Petitioners are entitled to an award of damages for the taking.

## COUNT IV

## DECLARATORY DECREE

48.

Petitioners re-allege and incorporate by reference all the above enumerated paragraphs as if restated verbatim.

49.

As stated above, because the re-zoning decision is "contingent" Petitioners are left in doubt as to whether the how property owned by the Respondent/Applicants is now zoned. Petitioners have not been provided with notice and an opportunity to be heard on the contingencies of a topographic survey, site plans, unit locations, and street and water setbacks, or the variables and contingencies listed in the minutes which passed the re-zoning. Petitioners have no way to know their rights or the status of the re-zoned property and are therefore entitled to a Declaratory decree stating that because the property of was never properly approved for re-zoning that the said property remains zoned AR - III.

## COUNT V

## ATTORNEYS' FEES

Page 21 of 23

50.

Petitioners re-allege and incorporate by reference all the above enumerated paragraphs as if restated verbatim.

51.

Respondent, Hall County's approval of the zoning change is clearly illegal and contrary to law, thus Respondent Hall County has been stubbornly litigious, has acted in bad faith and has caused Petitioners unnecessary trouble and expense and therefore Petitioners should recover expenses of litigation including, but not limited to, reasonable attorneys' fees pursuant to O.C.G.A Section 13-6-11.

WHEREFORE, Petitioners respectfully request:

A.    that the Court hear this petition according to law;

B.    that the Court hold that the Hall County Board of Commissioners erred as described above and reverse the re-zoning;

C.    that the Court dismiss the zoning change;

D.    that the Court grant Petitioners a trial on damages for the taking of their property;

E.    that the Court declare the zoning of the subject property to be AR-III;

G.    that an injunction issue holding that the subject property not be developed pursuant to the illegal zoning change;

H.    that they be awarded their costs and attorney's fees.

Respectfully Submitted,

This the _12th_ day of _November_, 2024.

Michael H. Cummings II
Attorney for Petitioners
State Bar No.  20171

*Michael H. Cummings II, LLC*
*Attorney at Law*
*P.O. Drawer 1568*
*Clayton, Georgia 30525*
*(706) 782-9297 - Office*
*(706) 782-0866 - Facsimile*



**HALL COUNTY BOARD OF COMMISSIONERS**
**VOTING MEETING MINUTES**
Hall County Government Center 2nd Floor
2875 Browns Bridge Road
Gainesville, GA 30504
Streamed Live on Hall County Government's Website - www.hallcounty.org
**Thursday, October 10, 2024 – 06:00 PM**

## Call to Order

*Chairman Higgins at 6:07 p.m.*

*Present:*

*Chairman Richard Higgins, Vice-Chairman Gregg Poole and Commissioners Kathy Cooper, Billy Powell and Jeff Stowe*

*Also present were County Administrator Zach Propes, Assistant County Administrators Katie Crumley and Casey Ramsey, Commission Clerk Jennifer Rivera, County Attorney William Linkous III, and Assistant County Attorney Justin Lawhon*

## Approve Agenda

*Commissioner Stowe/Commissioner Poole — approve — unanimous*

## Invocation

1    Chairman Richard Higgins

## Pledge

2    Commissioner Kathy Cooper

## Public Comments

*There were no comments from the public.*

## Proclamation/s

3    Approve the proclamation recognizing October 2024 as Cybersecurity Awareness Month.



1 of 9

*Commissioner Poole presented MIS Director Daniel Sexton, Kevin York, Benjamin Arevalo, Adam Welker, Allen Vosburgh, Jonathan Allan, Eric Britt, Eric Carney and Jared Thomas with the Proclamation.*

*Commissioner Stowe/Commissioner Powell — approve — unanimous*

## Consent Agenda

*Commissioner Powell/Commissioner Poole — approve — unanimous*

4       Approve the October 7, 2024 Work Session minutes.

5       Approve the September 24, 2024 Voting Meeting minutes.

6       Approve the September 24, 2024 Executive Session Minutes.

7       Approve the September 24, 2024 Meeting minutes.

8       Approval and authorization for the Chairman to execute a lease amendment between Hall County and the United States Department of Agriculture for lease of the facility located at 734 E. Crescent Drive in Gainesville, and authorization for the Chairman to execute any and all documents necessary to effectuate the lease, subject to review and approval by the County Attorney.

9       Approve the award of Task Order #2025-019 Replace Rooftop Air Conditioning Units at North Hall Community Center for Parks & Leisure Services to J.R. Hobbs Co - Atlanta of Lawrenceville, GA, in the amount of $157,936.25.

10      Approve the resolution declaring 0.401 +/- acres of County right of way on Chestnut Mountain Circle to be unserviceable, and approving the transfer of said Right of Way to Lanier Christian Academy, subject to certain requirements, and authorizing the Chairman to execute any and all documents necessary to effectuate the transfer, subject to the review and approval of the County Attorney.

11      Approval of the standing order from the Superior Courts of Hall County to set the salary of any full-time Juvenile Court Judge at 85 percent of the base salary received by a Superior Court Judge in the circuit and to adjust Juvenile Court Judges' salaries on the same date of any adjustment made to Superior Court Judges' salaries unless an alternate date is set by separate order at that time by the Chief Superior Court Judge.

12      Approve the continuation award and any supplemental funding of the FY 2025 Victims of Crime Act (VOCA) Grant for the District Attorney's Office to provide direct support to crime victims in the amount of $87,310.00, and if awarded, appoint the Grants Manager as the Program Designee and authorize the Chairman to execute all related application and award documents. No match is required.

13      Approve the purchase of a new 2024 Ford F-550 for Public Works & Utilities to Wade Ford, Inc,.of Smyrna, GA, in the amount of $73,963.00.

14    Approve the resurfacing list for the Georgia Department of Transportation (GDOT) FY 2025 Local Maintenance Improvement Grant (LMIG) application for 7.5 miles of road resurfacing on fourteen (14) various County Roads, in the amount of $3,616,612.00.

15    Approve the award of IFB #026-45 Spout Springs Water Reclamation Facility Expansion to 1.6 Million Gallons Per Day for Public Works & Utilities to Lakeshore Engineering, LLC of Atlanta, GA, in the amount of $20,972,000.00.

16    Approve the FY 2025 School Security Program annual agreement between Hall County and the Hall County Board of Education.

17    Approve the continuation award and any supplemental funding of the FY 2025 Victims of Crime Act (VOCA) Grant for the Solicitor's Office to provide direct support to crime victims in the amount of $125,741.00, and if awarded, appoint the Grants Manager as the Program Designee and authorize the Chairman to execute all related application and award documents. No match is required.

18    Approve the 2023 personal property refund in the amount of $128,552.92 for overpayment of taxes regarding property loacted at 2125 Candler Road, Gainesville, GA to Cottrell Properties, LP.

## Other Business - Public Works and Utilities

*Bill Nash, Director of Public Works and Utilities addressed the Board.*

19    Approve the award of RFQ/P #45-015 Roll-Off Solid Waste Hauling Services for Public Works & Utilities to North GA Excavating Group, LLC of Lula, GA. The estimated annual cost is $750,000.00.

*Commissioner Stowe/Commissioner Poole — approve — unanimous*

## Public Hearing to amend Hall County's Zoning Map as follows:

*Beth Garmon, Director of Planning and Zoning, addressed the Board.*

20    **5820 McEver Road | Amend Conditions of Zoning |** on a 3.57± acre tract located on the west side of McEver Road at its intersection with Lights Ferry Road | Zoned H-B, Tax Parcel 08119 000003 | **Proposed Use: Gas station and convenience store |** Commission District 2 | **Nabeel Group of Companies, Inc, applicant** NOTE: Tabled at the September 10, 2024 Voting Meeting until the October 10, 2024 Voting Meeting.

*Mr. Lawhon introduced the item. Ms. Garmon discussed the item.*

*Commissioner Powell/Commissioner Stowe — approve removing item 20 from the table — unanimous*

*Mr. Lawhon conducted the Public Hearing.*

*The following people addressed the Board:*

*Favor:*

- *Chuck Ross, 10 Lumpkin Street, Lawrenceville*

*Opposition:*

- *Win Fletcher, 5913 Thornhill Place, Flowery Branch*
- *Shelly Andrews, 5913 Thornhill Place, Flowery Branch*
- *Jay Kelley, 6023 Terrace Lake Point, Flowery Branch*
- *Tim Gail, 5918 Terrace Lake Point, Flowery Branch*

*Commissioner Powell/Commissioner Poole — approve tabling item 20 until the November 14, 2024 Voting Meeting — unanimous*

21  **2466 Old Fork Road | Rezone |** from Agricultural Residential III (AR-III) and Vacation Cottage (V-C) to Vacation Cottage (V-C) on a 4.80± acre tract located on the south side of Old Fork Road, at its intersection with Brand Drive | Zoned AR-III & V-C; Tax Parcel 10085 000061| **Proposed Use: 5-lot single-family development** | Commission District 2 | **Rashmiranjan Jyotiprakash, applicant**

*Mr. Lawhon introduced items 21 and 22, which were heard together. Ms. Garmon discussed the items. Mr. Lawhon conducted the Public Hearing.*

*The following people addressed the Board regarding both items 21 and 22:*

*Opposition:*

- *Scott Jacobs, 2488 Old Fork Road, Gainesville*

*Commissioner Powell/Commissioner Poole — approve with the thirteen (13) conditions listed below — unanimous*

*Conditions:*

1. *The property shall be developed in accordance with the site plan dated August 5, 2024, and as described in the project narrative, modified as necessary for compliance with conditions herein and development standards enforced at the time of site plan approval.*
2. *The property shall be subdivided into a maximum of 5 single-family lots in accordance with the requirements of the Vacation Cottage (V-C, 17.50) zoning district as detailed in Area and Setback Requirements (17.240).*
3. *Driveway access to the proposed lots shall be approved by the Hall County Engineering Department and all traffic engineering standards shall be met. The developer shall be responsible for all associated costs.*
4. *The following statement regarding the potential impacts of agricultural*

operations in the area shall be made a part of any plat recorded on the property: "Owners, occupants, and users of property shown on this plat are hereby informed of the impacts associated with normal farming practices which may take place on adjacent and nearby property including, but not limited to, noise, odors, dust, the operation of machinery of any kind, the storage and disposal of manure, and the application of fertilizers, herbicides, and pesticides. Therefore, owners, occupants, and users of the property shown on this plat should be prepared to expect the effects of such practices."

5. No variances or development exceptions are granted as part of this request that are not explicitly granted by board approval. The development shall be compliant with the Official Code of Hall County, as well as any other agencies or reviewing departments, including, but not limited to Environmental Health, the Fire Marshal, and Hall County Engineering.

6. All conditions of zoning shall be made part of any plats created for the property.

7. If improvements within the right-of-way are required, the developer shall be responsible for all associated costs and repair of any damage caused by the developer of existing utilities within the right-of-way.

8. Homes shall be restricted to site built only.

9. Vinyl siding shall be prohibited.

10. All Family Daycare Homes and Community Residences shall be prohibited.

11. The developer shall coordinate with the City of Gainesville to install a new water line subject to their standards that will include a fire hydrant and access for other property owners in the area to relocate their meters closer to their properties. Existing property owners shall be notified prior to any proposed utility line work.

12. The developer shall obtain a land disturbance permit (LDP) for the proposed work which shall include a hydrology study for all five (5) lots.

13. The minimum house size shall be a minimum of 2,500 heated floor area.

22      **2466 Old Fork Road | Use Subject to County Commission Approval |** on a 4.80± acre tract located on the south side of Old Fork Road, at its intersection with Brand Drive | Zoned AR-III & V-C; Tax Parcel 10085 000061| **Proposed Use: 5-lot single-family development |** Commission District 2 | **Rashmiranjan Jyotiprakash, applicant**

*Items 21 and 22 were heard together. See item 21 for public hearing details.*

*Commissioner Powell/Commissioner Stowe — approve with the thirteen (13) conditions listed below — unanimous*

*Conditions:*

1. *The property shall be developed in accordance with the site plan dated August 5, 2024, and as described in the project narrative, modified as necessary for compliance with conditions herein and development standards enforced at the time of site plan approval.*
2. *The property shall be subdivided into a maximum of 5 single-family lots in accordance with the requirements of the Vacation Cottage (V-C, 17.50) zoning district as detailed in Area and Setback Requirements (17.240).*
3. *Driveway access to the proposed lots shall be approved by the Hall County Engineering Department and all traffic engineering standards shall be met. The developer shall be responsible for all associated costs.*
4. *The following statement regarding the potential impacts of agricultural operations in the area shall be made a part of any plat recorded on the property: "Owners, occupants, and users of property shown on this plat are hereby informed of the impacts associated with normal farming practices which may take place on adjacent and nearby property including, but not limited to, noise, odors, dust, the operation of machinery of any kind, the storage and disposal of manure, and the application of fertilizers, herbicides, and pesticides. Therefore, owners, occupants, and users of the property shown on this plat should be prepared to expect the effects of such practices."*
5. *No variances or development exceptions are granted as part of this request that are not explicitly granted by board approval. The development shall be compliant with the Official Code of Hall County, as well as any other agencies or reviewing departments, including, but not limited to Environmental Health, the Fire Marshal, and Hall County Engineering.*
6. *All conditions of zoning shall be made part of any plats created for the property.*
7. *If improvements within the right-of-way are required, the developer shall be responsible for all associated costs and repair of any damage caused by the developer of existing utilities within the right-of-way.*
8. *Homes shall be restricted to site built only.*
9. *Vinyl siding shall be prohibited.*
10. *All Family Daycare Homes and Community Residences shall be prohibited.*
11. *The developer shall coordinate with the City of Gainesville to install a new water line subject to their standards that will include a fire hydrant and access for other property owners in the area to relocate their meters closer to their properties. Exisiting property owners shall be notified prior to any proposed utility line work.*
12. *The developer shall obtain a land disturbance permit (LDP) for the proposed work which shall include a hydrology study for all five (5) lots.*
13. *The minimum house size shall be a minimum of 2,500 heated floor area.*

*Commissioner Cooper exited the meeting.*

23    **0, 4611, 4627 Guth Road & 0, 4561, 4613 J M Turk Road & 4590, 4601, 4610 Stanley Road | Rezone |** from Agricultural Residential-III (AR-III) to Planned Residential Development (PRD) | on a 114.147± acre tract located on the east side of J M Turk Road at its intersection with Guth Road | Zoned AR-III; Tax Parcels 15043 000027, 000201, 000128 & 15044 000035, 15044 000127, 15043 000109 & 15044 000035B, 000043, 000100 | **Proposed Use: 256-unit residential development** | Commission District 1 | **Steven P. Gilliam, applicant**

*Mr. Lawhon introduced the item. Ms. Garmon discussed the item. Mr. Lawhon conducted the Public Hearing.*

*The following people addressed the Board:*

*Favor:*

- *Tyler Smith, 265 Thompson Place, Gainesville*
- *Jill Casper Stanley, 4561 J M Turk Road, Flowery Branch*
- *Randy Jones, 4561 J M Turk Road, Flowery Branch*

*Opposition:*

- *Bill Doucher, 4789 J M Turk Road, Flowery Branch*
- *Penni Ganyard, 2175 Silver Circle, Gainesville*
- *Mark Dunn, 4781 J M Turk Road, Flowery Branch*
- *Tommy Channell, 4737 J M Turk Road, Flowery Branch*
- *Albert Guth, 4589 Guth Road, Flowery Branch*
- *Mark Faul, 4567 Stanley Road, Flowery Branch*
- *Mike Morton, 6057 Daffodil Drive, Flowery Branch*
- *Dale Casto, 4801 J M Turk Road, Flowery Branch*

*Commissioner Powell/Commissioner — approve with the fourteen (14) conditions listed below — Vote: 3 to 1*

*Commissioner Cooper — recused*

*Commissioner Powell — aye*

*Chairman Higgins — aye*

*Commissioner Poole — nay*

*Commissioner Stowe — aye*

*Motion passed.*

*Conditions:*

1. *Development is approved as generally depicted on the site plan dated August 20, 2024, and as detailed in the project narrative dated August 20, 2024 and in the comparison chart received October 10, 2024, modified as necessary for compliance with conditions herein and development standards enforced at the time of site plan approval.*
2. *The minimum heated floor area (HFA) shall be 1,800 square feet for single-familydetached homes and 1,300 square feet for townhomes.*

3. *A 50-foot transitional buffer (planted or undisturbed) shall be maintained along all externalproperty lines.*

4. *All single-family homes and townhomes shall provide two car garages and driveways toaccommodate two cars for parking. Garage door width shall not exceed 55% of the width ofthe front façade of the single-family residences and a maximum garage door width of 55% ofthe front façade of the townhomes.*

5. *Residential driveways shall measure no less than 22 feet in length from the right-of-way tothe front of the garage door. All other parking must meet the standards listed in 17.250 of theOfficial Code of Hall County.*

6. *The amenity area shall include a swimming pool, a dog park, and four (4) mail kiosks withadjacent parking as depicted on the proposed site plan date August 20, 2024, and shall becompleted before 50% of the final buildout of the development.*

7. *The Declaration of Covenants, Conditions, and Restrictions for the subdivision and thedocuments establishing the homeowner's association shall be submitted for review. Thesedocuments shall include a provision that would assure maintenance of the amenity packagethrough adequate assessment of the subdivision property and would provide forestablishing a lien against any property failing to pay said assessment. These documentsshall be recorded simultaneously with the final plat and/or prior to the sale of any lotswithin the subdivision.*

8. *All designated open space within the development shall be commonly held and maintainedand shall not be the responsibility of any individual homeowner(s). This common open spaceownership shall be included in the deeds created for each lot.*

9. *Access to the development shall be approved by the Hall County Engineering Department.Access to the property from Guth Road shall be limited to emergency vehicles only. Thedeveloper shall implement all recommendations of the traffic study, subject to final reviewand approval by both Hall County Engineering. The developer shall be responsible for anycosts associated with these improvements.*

10. *The development shall be limited to a maximum of four (4) model homes prior to approvaland recording of the final plat. Model home permits may be issued prior to Final Plat recordingprovided that hard surface (crusher run) access is provided, and fire protection (functioninghydrant) is located within 500 feet of any structure under construction. No certificate ofoccupancy permits shall be issued prior to Final Plat recording.*

11. *The proposed lift station shall be located on its own lot.*

12. *No variances or development exceptions are granted as part of this request that are notexplicitly granted by Board approval. The development shall be compliant with the OfficialCode of Hall County, as well as any other agencies or reviewing departments, including, butnot limited to Environmental Health, the Fire Marshal, and Hall County Engineering.*

13. *The following statement regarding the potential impacts of agricultural operation in thearea shall be made a part of any plat recorded on the property: "Owners, occupants, and users of property shown on this plat are hereby informed of the impacts associated with normal farming practices which may take place on adjacent and nearby property including, but not limited to, noise, odors, dust, the operation of machinery of any kind, the storage and disposal of manure, and the application of fertilizers,herbicides, and pesticides. Therefore, owners, occupants, and users of the property*

*shownon this plat should be prepared to expect the effects of such practices."*

14. *All conditions of zoning shall be made a part of any plats or construction plans created for the subdivision.*

*Commissioner Cooper re-entered the meeting.*

## County Administrator

*Mr. Propes addressed the Board. He stated the following:*

- *Early Voting will be held October 15, 2024 thru November 1, 2024. For questions about early voting or access to your ballot proof, visit the Elections page on the Hall County website. Early Voting locations are:*
  - *North Hall Community Center*
  - *East Hall Community Center*
  - *Mulberry Creek Community Center*
  - *Spout Springs Library*
  - *Murrayville Library*
  - *Chicopee Woods Ag Center*
  - *Gainesville Civic Center*
- *Announced there will be TSPLOST Public Information Sessions at the following locations:*
  - *Mule Camp Market - Friday, October 11, 2024 thru Sunday, October 13, 2024*
  - *Downtown Gainesville Library - Monday, October 14, 2024 from 3:30 to 8:00 pm*
  - *Presentation at the Clermont Chattahoochee Center - Tuesday, October 15, 2024 at 6:30 pm*

## Commission Time

*Commissioner Gregg Poole, District 3, stated for those in attendance to go vote.*

*Commissioner Jeff Stowe, District 4, acknowledged current members of Leadership Hall. The following members addressed the Board:*

- *Jason Burruss (Teston & Burruss)*
- *Justin Burruss (Rushton)*

## Adjourn

*Commissioner Powell/Commissioner Poole — adjourn at 7:51 p.m. — unanimous*

Exhibit "B"

Buddy A. Stanley, who is subject to the jurisdiction and may be served at 4561 J M. Turk Rd, Flowery Branch, Georgia 30542.

Gloria M. Stanley, who is subject to the jurisdiction and may be served at 4590 Stanley Rd, Flowery Branch, Georgia 30542.

Randy Jones, who is subject to the jurisdiction and may be served at 204 Beechnut Ave, South Mills, North Carolina 27976.

Tammy Jones, who is subject to the jurisdiction and may be served at 204 Beechnut Ave, South Mills, North Carolina 27976.

Travis Lee Little, who is subject to the jurisdiction and may be served at 4611 Guth Road, Flowery Branch, Georgia 30542.

Roger Little, who is subject to the jurisdiction and may be served at 4627 Guth Road, Flowery Branch, Georgia 30542.

Cathy Little, who is subject to the jurisdiction and may be served at 4627 Guth Road, Flowery Branch, Georgia 30542.

Roger R. Little, who is subject to the jurisdiction and may be served at 4613 J M Turk Road, Flowery Branch, Georgia 30542.



# HULSEY, OLIVER & MAHAR, LLP

### EST. 1914

**ATTORNEYS AT LAW**

JULIUS M. HULSEY
R. DAVID SYFAN
THOMAS L. FITZGERALD
THOMAS D. CALKINS
ABBOTT S. HAYES, JR.
PAUL B. SMART
JASON A. DEAN
T. WESLEY ROBINSON
JASON E. VOYLES
JESSICA M. LUND
VANESSA E. SYKES
MONICA D. HAYFIELD
AMANDA L. WARD
BRADFORD A. LORENZ
EMMA S. COURTNEY

E.D. KENYON
(1890-1981)
SAMUEL L. OLIVER
(1942-2011)

OF COUNSEL

JANE A. RANGE

October 10, 2024

Board of Commissioners of Hall County
2875 Browns Bridge Road
Gainesville, GA 30504

RE: Zoning Application for 256 Residences on JM Turk Road at Stanley Road

Ladies and Gentleman:

I represent Mark Faul with respect to this zoning application scheduled to be heard before the Commission on October 10, 2024. Mr. Faul opposes the application due to the density of the development in an agricultural area of Hall County that is out of character of the land use map as well as with the neighboring properties.

Mr. Faul operates a Georgia state certified agritourism venue within his farm, which is in a CUVA covenant with the county, both of which are adjacent to and share boundaries across Stanley Road with the proposed development. Mr. Faul maintains the largest vineyard in Hall County, growing grapes on 5 acres of his farm, as well as maintaining his residence on the farm. He operates a winery venue that offers sales of the wine, as well as wine tasting on a portion of the property that can't be included in the CUVA covenant property. The two properties comprise his business, farm/vineyard and homeplace.

Currently, Stanley Road is the main access to the vineyard operation. Stanley Road is the access point for the large trucks that carry product and supplies to and from the farm, as well as the tractor route for bringing grapes to the vineyard building for fermenting. Mr. Faul's vineyard and sales operations are profitable and provide him with a source of income. Mr. Faul did an economic analysis of the winery over the next few years, showing the potential losses caused by

EXHIBIT
C

the new subdivision being built. Revenues could drop about Fifty-Seven (57%) Percent over the next ten years.

Mr. Faul's business depends on the continued production of grapes on the farm and the winemaking operation. Vineyards and tasting venues are a popular tourist attraction in Georgia as well as businesses in their own right. The University of Georgia Center for Agribusiness and Economic Development that is part of the College of Agricultural and Environmental Services produced a report on the "Economic Contribution of Georgia Wineries and Vineyards" in September of 2013. A copy of the report is attached with this letter. The report calculated the economic impact of wineries and vineyards to be a multi-million-dollar industry that produces significant state and local tax revenues. The report also surveyed consumer sentiment and reasons for coming to wineries across the state. The vineyard owners were surveyed as well. The report in Section 1.3.5, indicated that the owners listed "scenery events and outdoor recreation/camping" were important factors in attracting visitors. Hall County has one of the largest concentrations of parks with Lake Lanier and offers camping and other recreation opportunities, making it a logical destination for people wishing to visit a winery as part of a vacation or weekend away. In Section 1.4.6 of the report, visitors listed visiting wineries as part of a trip for overall attractions on the area such as scenery or a festival. The synergy of the winery/vineyard in Hall County with the presence of Lake Lanier and other recreational opportunities in Hall County is important to Mr. Faul's business. That includes the scenery and attractiveness of the current rural setting of this farm.

Given the predominant large lot/ farm tract uses still in the area and the zoning/future land use character area, this location is inappropriate for such a large, high-density subdivision. While the newest version of the subdivision plan does not use Stanley Road as an entrance, it will still have an impact on Mr. Faul's operations as well as the general safety of commuters given the truck and tractor/wagon traffic. The update to the traffic study indicates a net decrease in daily car trips of 516 from the original total 2800, but still leaving an enormous increase over current traffic at over 2200 trips a day. As a working vineyard that is Mr. Faul's source of income, any negative impact on his business will damage his economic interest in his property. Both the traffic increase and the inappropriate to the area density of homes will damage the business. This loss is unique to Mr. Faul's property due to the location and use of Stanley Drive in the business.

Further, the drawing of the site plan shows a curbed and paved entranceway at JM Turk Road that would narrow the entrance to Stanley Drive, a public right of way serving Mr. Faul's farm. This is a loss not shared by the average owner in the area due to his direct proximity to the development and the loss of the scenic view. It would make it virtually impossible to maintain access that Mr. Faul now has to his vineyard and winery operation. The County cannot take his road access without just and adequate compensation. This plan would take the road access for the farm business.

Mr. Faul believes that this development, in line with the staff recommendation, should be denial. If the Board should approve this development based on the updated plans, Mr. Faul will

suffer business losses rising to the level of an inverse condemnation of his property.   The current zoning request should be denied.

Very truly yours,

Jane A. Range



# The University of Georgia

Center for Agribusiness and Economic Development
College of Agricultural and Environmental Sciences

## Economic Contribution of Georgia Wineries and Vineyards

Prepared by:
Kent Wolfe, Sharon P. Kane, and Karen Stubbs
Center Report: CR-13-06
September 2013



# Economic Contribution of
# Georgia Wineries and Vineyards

Prepared by:
Kent Wolfe, Sharon P. Kane, and Karen Stubbs

University of Georgia
Center for Agribusiness and Economic Development

Center Report: CR-13-06



September 30, 2013

# Executive Summary

The Center for Agribusiness and Economic Development (CAED) was commissioned to examine the data from two surveys to obtain detailed information on winery and vineyard operators and their visitors to update their profiles and estimate the sector's economic contribution to Georgia's economy from a three-component perspective. These components include grape production, winery and vineyard operations, and visitor expenditures. Some highlights from the findings include:

- In terms of grape production, the direct contribution is $3.4 million worth of output with a total state output contribution of $6.4 million and 44.5 jobs. The direct figure is very similar to the CAED Farm Gate Value Report for grapes using for winemaking of $3.0 million in 2011. Based on these figures, grape production generates $190,267 in state and local taxes.

- The contribution estimate of winery and vineyard operations includes a direct contribution of $15.1 million in sales or output, with a total of $23.4 million of output and 95.7 jobs that can be attributed to winery and vineyard operations in the economy. Based on these figures, wineries (less grape production and visitor spending) account for $1,143,202 worth of state and local tax revenue.

- Visitor spending contributes to the role of wineries and vineyards in the Georgia economy. To provide a range of estimates for the visitor contribution to the area economy, researchers have broken down the visitors according to their reported purpose of their trip to the winery and/or vineyard. The total contribution of output from spending of those whose primary purpose is to visit the winery or vineyard is $12.7 million, accounting for 125.4 jobs statewide. This visitor spending accounts for $685,540 worth of state and local taxes. In reference to the visitors that came to the area with another purpose, but visited the winery or vineyard, the total contribution of output or sales is $39.0 million, attributing total of 389.9 jobs within the state economy. These visitors account for approximately $2.1 million worth of state and local taxes.

- Combining all of the categories, Georgia wineries and vineyards and related sectors, along with visitor spending contributes up to $81.6 million in output, 655.6 jobs throughout the states economy, and $4.1 million in state and local tax revenue.

# Contents

1  Economic Contribution of Georgia Wineries and Vineyards . . . . . . . 4
  1.1  Background/Overview . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  1.2  Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      1.2.1  Owner and Visitor Surveys . . . . . . . . . . . . . . . . . . . 4
      1.2.2  Economic Contribution Analysis . . . . . . . . . . . . . . . . 5
  1.3  Owner Survey Results . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      1.3.1  Seasonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      1.3.2  Annual Visitors . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      1.3.3  Visitor Origins . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      1.3.4  Marketing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1.3.5  Area Attractions . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1.3.6  Networking and Associations . . . . . . . . . . . . . . . . . . 10
      1.3.7  Georgia Winery and Vineyard Facts . . . . . . . . . . . . . . 12
      1.3.8  Support for Viticulture Area Designation . . . . . . . . . . . 16
      1.3.9  Obstacles Facing Georgia Wine Industry . . . . . . . . . . . 16
      1.3.10  Actions to Help Develop Georgia Wine Industry . . . . . . . 17
  1.4  Visitor Survey Results . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      1.4.1  Demographic Profile of Visitors . . . . . . . . . . . . . . . . . 19
      1.4.2  Wine Consumption Frequency . . . . . . . . . . . . . . . . . 20
      1.4.3  Wine Consumption Occasions . . . . . . . . . . . . . . . . . . 20
      1.4.4  Visitor Wine Preference . . . . . . . . . . . . . . . . . . . . . 20
      1.4.5  Visitor Wine Purchases . . . . . . . . . . . . . . . . . . . . . 22
      1.4.6  Reason for Visiting Winery and Vineyard . . . . . . . . . . . 23
      1.4.7  Distance Visitors Traveled . . . . . . . . . . . . . . . . . . . 24
      1.4.8  Visitor Lodging . . . . . . . . . . . . . . . . . . . . . . . . . . 24
  1.5  Economic Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . 25
  1.6  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# List of Tables

1.1 Reason for Visit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
1.2 Visitor Travel Distance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
1.3 Importance of Surrounding States and Regions Within Georgia . . . . 8
1.4 Marketing Efforts by Owners . . . . . . . . . . . . . . . . . . . . . . . . . 9
1.5 Business Attributed to Website & Facebook . . . . . . . . . . . . . . . . 10
1.6 Other Area Attractions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
1.7 Grape Varieties Currently Produced . . . . . . . . . . . . . . . . . . . . 13
1.8 Grape Varieties for Future Production . . . . . . . . . . . . . . . . . . . . 14
1.9 Avg. Retail Wine Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
1.10 Three Year Expansion Plans . . . . . . . . . . . . . . . . . . . . . . . . . 16
1.11 Support for Viticulture Area Designation . . . . . . . . . . . . . . . . . . 16
1.12 Visitor Household Income . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
1.13 Visitor Wine Preference . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
1.14 Visitor Wine Purchase Store Type . . . . . . . . . . . . . . . . . . . . . . 22
1.15 Price Ranges for Bottled Wine . . . . . . . . . . . . . . . . . . . . . . . . 22
1.16 Geographic Origin of Wine Purchased . . . . . . . . . . . . . . . . . . . 23
1.17 Familiarity with Georgia Wine Industry . . . . . . . . . . . . . . . . . . 23
1.18 Visitor Miles Traveled . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
1.19 Lodging Choice by Trip Purpose . . . . . . . . . . . . . . . . . . . . . . 25
1.20 Spending Per Day by Overnight and Day Visitors . . . . . . . . . . . . 25
1.21 Annual Visitor Spending by Winery Primary Purpose and Other . . . 26
1.22 Grape Production Contribution . . . . . . . . . . . . . . . . . . . . . . . 26
1.23 Winery Contribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
1.24 Primary Purpose Visitor Spending . . . . . . . . . . . . . . . . . . . . . 28
1.25 Other Purpose Visitor Spending . . . . . . . . . . . . . . . . . . . . . . 28
1.26 Total Contribution of All Components . . . . . . . . . . . . . . . . . . . 29

# List of Figures

1.1   Seasonal Traffic Patterns . . . . . . . . . . . . . . . . . . . . . . . . . .   6

1.2   Visitor Origin Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

1.3   Wine Consumption Frequency . . . . . . . . . . . . . . . . . . . . . . .   20

# Economic Contribution of Georgia Wineries and Vineyards

## 1.1   Background/Overview

The Center for Agribusiness and Economic Development (CAED) was commissioned to examine the data from two surveys conducted in the fall of 2012 and spring of 2013 to obtain detailed information on winery and vineyard operators and visitors with the purpose of updating their profiles and provide data to estimate the sector's economic contribution to Georgia's economy.

## 1.2   Methodology

### 1.2.1   Owner and Visitor Surveys

The two surveys from the previous study were adapted and updated to collect detailed information on the industry. The first survey, entitled *Georgia Winery and Vineyard Owner Survey*, is focused on collecting cost figures for operating a winery while providing additional descriptive information regarding winery and vineyard operations. The second survey, *Georgia Winery and Vineyard Visitor Survey*, is designed to obtain detailed expenditure data and demographic characteristics from Georgia winery and vineyard visitors to help understand their spending patterns. Data collected from both was used to estimate the economic contribution of Georgias winery and vineyard grape production, operations, and visitor expenditures.

The *Georgia Winery and Vineyard Owner Survey* contains questions regarding visitor totals, marketing, grape acquisition, expenditures, revenues, future plans as well as listing any obstacles encountered by winery and vineyard operators. Most of the questions in the survey are used to provide descriptive statistics of operations that might be useful for potential winery operators or winery analysts. Georgia wineries and vineyards were identified using the Alcohol and Tobacco Tax and Trade Bureau list, along with additional names and contacts provided by the Winegrowers Association of Georgia.

4

Both surveys contained a cover page designed to solicit cooperation in completing the survey and describing its importance in defining the economic contribution of the industry on a state-wide level. The survey instrument itself was electronic and disseminated through the Winegrowers Association of Georgia directly to their membership and others. The visitor survey was implemented to capture the impact of the visitors and their expenditures associated with the various activities they participated in as a result of coming to the area and visiting the winery and/or vineyard. Winery and vineyard visitors can affect the local economy as they spend money on food, crafts, gas, lodging and other products and services in the area. The *Georgia Winery and Vineyard Visitor Survey* was created to capture per-person per-day spending in the area surrounding the survey. This allows the derivation of an average expenditure per-person dollar amount. This figure can be used to estimate the total number of visitors and how much they spend. Participating wineries were given visitor surveys to be administered to visitors during the fall of 2012.

## 1.2.2   Economic Contribution Analysis

The methodology applied is an examination of economic contribution. Economic contribution is estimated with models that separate the economy into various industrial sectors such as agriculture, construction, manufacturing, trade, and services; quantifying the relationships between these sectors. For this analysis, we use IMPLAN economic assessment data and software. This model assists in calculating how the sectors under analysis affect output, income, and employment in other industries. These changes are expressed in terms of direct, indirect, and induced effects for each sector of the economy, and help to explain the overall role or importance of the winery and vineyard sector to the total economy.

Direct effects represent the initial influence on the economy, while the indirect effects reflect sales in input industries to those sectors. Induced effects reflect the household spending due to earnings and the resultant spending in both the direct and indirect sectors. Thus, the total economic contribution is the sum of direct, indirect, and induced effects. The analysis is interpreted in terms of employment (jobs), labor income (employee compensation including benefits and proprietor income), and output (market value of goods and services produced ).[1]

Contribution analysis differs from the more common economic impact analysis of an event or change in the economy, which measures marginal impact. Instead, contribution analysis demonstrates the economic attribution of a project, business, or existing industry (i.e., Wineries and vineyards). The important difference is that in contribution analysis, direct effects represent all sales by the indicated sector (i.e. production) and indirect effects are all sales in the supply chain plus household spending. Together these figures help to illuminate the magnitude of winery and vineyard enterprises in Georgia, the industries that supply inputs to them, and the spending

---

[1] A job in IMPLAN = the annual average of monthly jobs in that industry (this is the same definition used by Quarterly Census of Employment and Wages (QCEW), Bureau of Labor Statistics (BLS), and Bureau of Economic Analysis (BEA) nationally). Thus, 1 job lasting 12 months = 2 jobs lasting 6 months each = 3 jobs lasting 4 months each. A job can be either full-time or part-time. Source: www.implan.com, glossary of terms.

from households that draw income from those sectors. Because of the detailed information available from surveys, analysis from the standpoint of three components was conducted - grape production, wineries (minus production and visitors), and visitors (including those who came with the primary purpose of visiting the winery and those who did not). This study does not represent net economic benefits, cost-benefit analysis, nor does it measure any of the social benefits that might accrue to the state of Georgia for having wineries and vineyards and visitors present.

## 1.3    Owner Survey Results

This section of the report provides descriptive information regarding the wineries that participated in the research project, their associated activities, and operations which are derived from the Georgia Winery and Vineyard Owner Survey. Of the wineries and vineyards that were identified, a total of 21 participated in the study. However, not all 21 answered each question within the survey.[2]

### 1.3.1    Seasonality

Most (88 %) of the participating wineries and vineyards reported seasonality in customer traffic and sales. Figure 1 presents the visitor traffic by the four seasons. The figure indicates that breakdown of visitors by season for all the wineries. Fall and summer are the busiest seasons, followed by spring and winter.

Figure 1.1: Seasonal Traffic Patterns



### 1.3.2    Annual Visitors

The winery survey asked the wineries to provide an estimate of the total number of visitors they host annually. On average, respondents reported that 7,885 people visited their winery and/or vineyard in the last twelve months. The median number of visitors was estimated to be 1,500 annually.

The mean value will be used to represent the number of visitors non-responding wineries and vineyards entertain annually. Extrapolating the mean annual visitors calculated from the participating wineries to the non-participating wineries it is estimated that there was a total of 424,951 visitor days in the last twelve months.[3] The

---

[2]Because not all surveys were filled out completely, it was possible to only complete the analysis from a statewide perspective. Researchers were unable to perform analysis on more detailed geographic characteristics and other distinctions present in the survey. Not only were there too few responses to analyze for some of the questions, but the finer detail could risk disclosure of particular business entities.

[3]The options for operation description included 1) winery and vineyard, 2) winery only, and 3) vineyard only. The visitor figures were calculated separately for each. Based on the survey responses, the number of visitor days for wineries and vineyards were 418,817 and for vineyards 6,133. Since

figure was calculated by using the mean visitors days reported by wineries and vineyards and multiply by the estimated total number. Georgia wineries and vineyards range significantly in size from less than 100 visitors to 45,000 visitors.

In breaking down the total figures for visitors, respondents were offered a selection of choices that sum to 100 % The following table shows a breakdown of the responses.

Table 1.1: Owner Reported Visitor Type by Reason for Visit

| Visitor Type | Percentage |
|---|---|
| Winery & Vineyard Visitors | 75.8 |
| Special Event Visitors | 23.8 |
| Gift Shop Visitors | 2.9 |
| Restaurant Visitors | 8.0 |
| Lodging or Other | 0.0 |

### 1.3.3  Visitor Origins

The owners were also asked the approximate percentage of the reported visitors that were from out-of-state, which they reported as just over one-quarter (28.2%) of these visitors. Table 1.2 displays the percentage distribution that winery and vineyard operators reported their customers traveled. The table indicates that a majority (88.2%) of visitors are traveling up to 99 miles to the winery, with the highest reported category between 50 and 99 miles. Nearly three out of ten (29.4%) visitors are traveling less than 50 miles. The owners indicated that a small but significant number of visitors (11.8%) travel between 100 and 499 miles to patron the wineries and vineyards.

Table 1.2: Winery and Vineyard Visitors Travel Distance - Owner Reported

| Distance | Percentage |
|---|---|
| Less than 20 miles | 11.8 |
| 20-49 miles | 17.7 |
| 50-99 miles | 58.8 |
| 100-499 miles | 11.8 |
| 500 miles or more | none reported |

The survey asked winery operators to rank[4] five selected states and an other category in which they could name any state, in order of most to least visitors. The question is used to examine where most of the out-of-state visitors are coming from

there was only one response from a business reporting winery only, that response was combined with the winery and vineyard category to prevent any disclosure of identifying information about that establishment.

[4] 1=most visitors; 6=least

according to the winery operator. Florida was indicated by the winery and vineyard owners as the state with the most residents visiting. All of the participating respondents indicated either 1 or 2 for their ranking of Florida, with a mean ranking of just over 1. The ranking of the states providing the most visitors, excluding Georgia, are listed in Table 1.3. The order of importance (starting with most important) as indicated by owners are as follows: Florida, South Carolina, North Carolina, Tennessee, Alabama, and Other. A similar question was posed to winery and vineyard owners to rank[5] different regions of Georgia with regard to visitor origins. Results were that most visitors reside in Metro Atlanta, North Georgia, Savannah, Augusta, South Georgia, and other. Figure 1.2 is a map of home locations of winery and vineyard visitors obtained from the visitor survey zip codes as a comparison.

Table 1.3: Importance of Surrounding States and Regions Within Georgia

| Out of State Visitors | Avg. Rank | In-State Visitors | Avg. Rank |
|---|---|---|---|
| Florida | 1.2 | Metro Atlanta | 1.5 |
| South Carolina | 2.6 | North Georgia | 2.6 |
| North Carolina | 3.3 | Savannah | 3.8 |
| Tennessee | 4.0 | Augusta | 4.3 |
| Alabama | 4.1 | South Georgia | 4.5 |
| Other | 5.8 | Macon | 4.8 |
| | | Other Georgia Location | 6.5 |

Figure 1.2: Visitor Origin Map



[5]The ranking for this question was 1 for most visitors, 7 for least.

8

### 1.3.4    Marketing

Marketing plays a significant role in attracting customers and increasing sales through distribution channels. From the survey, Table 1.4 shows the most common marketing strategies in descending order used by the wineries that responded to the survey. Marketing through the Internet and Facebook are clearly the most popular marketing activity followed by the use of rack cards, magazines and the local Chamber of Commerce or Convention and Visitors Bureau (CVB). None of the owners reported that they market their vineyard separately from the winery.

Other responses listed include the following: personal circles or word of mouth, a local shopper ad, Point North; Atlanta Mag; Mountain Lane, some paid ads (got lots of free coverage in magazines such as Southern Living, NE Georgia Living, Atlanta Magazine, Southern Distinction, Macon Magazine), local newspaper ad for special events (in the N Georgia mountain communities), and fliers.

Table 1.4: Marketing Efforts by Owners

| Marketing Type | Percent |
|---|---|
| Internet | 71.4 |
| Facebook | 61.9 |
| Rack Cards | 57.1 |
| Magazines | 52.4 |
| Chamber/CVB | 52.4 |
| Cross marketing (Other Wineries) | 42.9 |
| Cross marketing (Tourism Industry) | 42.9 |
| Brochures | 38.1 |
| Travel Guides | 33.3 |
| Other | 28.6 |
| Radio | 19.0 |
| Twitter | 19.0 |
| Television | 14.3 |

Owners were also asked to describe the portion of their business that they can attribute to their website and Facebook pages. None indicated that they did not have a website or Facebook page, while the highest response for website was in the 50 to 74 percent category and highest for Facebook was in the 25 to 49 percent category. See Table 1.5 for website and Facebook details.

### 1.3.5    Area Attractions

Table 1.6 shows winery and vineyard owner responses regarding attractions that draw visitors to the area other than the winery or vineyard. Scenery, events, and outdoor recreation/camping were important factors with regard to attracting visitors to a winery and vineyard. Specific mentions under the other category include apple houses and festivals, fall festivals, trade shows, nurseries, and other wineries.

Table 1.5: Business Attributed to Website & Facebook

| Portion of Business | Website | Facebook |
|---|---|---|
| None | 6.7 | 14.3 |
| Less than 10% | 13.3 | 7.1 |
| 10%-24% | 20.0 | 21.3 |
| 25%-49% | 20.0 | 42.9 |
| 50%-74% | 26.7 | 14.3 |
| 75%-99% | 13.3 | 0.0 |

Table 1.6: Area Attractions Drawing Visitors

| Attraction | Percentage |
|---|---|
| Scenery | 76.2 |
| Events | 71.4 |
| Outdoor recreation/ Camping | 66.7 |
| Culture | 28.6 |
| Other | 19.0 |
| None | 9.5 |

### 1.3.6   Networking and Associations

When asked if they belonged to any local/regional organizations or associations for winery or vineyard owners, responses included Wine Growers Association of Georgia, Mountain Wine Country Association, West Georgia Vineyard and Winery Association, Georgia Wine Council, Northwest Vineyard Association, WineAmerica, GeorgiaGrown, and city/county Chambers of Commerce or CVBs. One mentioned that they work with other wineries to make their wine since their winery is not yet built.

In responding to how they work individually with local businesses to promote their own business, the responses included:

- We market with local restaurants and lodging facilities

- Cross marketing, word of mouth, rack card exchange, verbal description to interested customers looking for other activities

- Work with lodging partners with coupons and specials

- Licensing prohibits promoting within County

- Co-op advertising, brochure sharing, web links

- We distribute discount coupons to some local businesses

- Referrals

10

- Sponsoring special events with wine donations and raising funds for the local charities.

- Joint rack cards, joint events, joint websites

- Personal contact with B&B's and restaurants

- The Chamber/CVB publishes a joint Dahlonega Wine Trail Brochure which is paid for equally by each winery. The Chamber/CVB also organizes a Dahlonega Wine Trail Weekend

- Work with local B&B's, cabins, resorts, restaurants, merchants, clubs, transportation services, International Associations, and LivingSocial group tours

- Present an annual Georgia Wine Country Festival (now in its 12th year) every weekend in June at Three Sisters Vineyards - inviting Georgia wineries to come and pour wines and sell products

- Wine dinners with area restaurants and inns

- Special wine tastings. (most regional wine shops and many upscale restaurants carry our wines)

- Work with WAG to participate in Wine Highway Weekend

With respect to the importance of business networking to the success of their business, 70% of the winery and vineyard owners felt that it was either very or extremely important to their success. In addition, 70% of owners indicated in the survey that they would be interested in participating in a new networking program if available. The following festivals include those in which they participated in the last twelve months:

- Wine Fest at Habersham Winery

- GA Fine Wine Festival at Blackstock Vineyards and Winery

- Crane Creek Tomato Fest

- Crane Creek Harvest Fest

- Country wine festival Three Sisters

- Steak cook-off Lincolnton

- Taste of Sautee

- Taste of Clarkesville

- Winefest at Ashford Manor

- Aqua Vino at the GA Aquarium

- Vidalia onion festival

11

- Taste of White County

- Sautee Nacoochee Winter Wine Weekend

- Spring Wine Highway Weekend

- Rabun County farm winery day

- Georgia Wine Country Festival

- Dahlonega Wine Trail Weekend

- A Vintage Affair,

- Decatur Wine Festival

- High Museum Wine Auction

- Oconee Arts Festival (food and wine) Athens-Watkinsville

- Crushfest at Yonah Mountain Vineyards

### 1.3.7  Georgia Winery and Vineyard Facts

The wineries and vineyards were asked the date the facility was created. Those wineries responding to the survey are on average 8.5 years old. Given the range of years they have been open, a better indication might be the median number of years, which is approximately 6 years.

The average Georgia winery/vineyard from our survey reported a total of 172.1 total acres. Of the total 43.9 acres are reported as used for grape production, with an average of 52.2% in vinifera and/or hybrid grades and 11.1% in grapes other than vinifera or hybrid. Owners reported that over the next year, the wineries and vineyards plan to expand the acreage devoted to grapes by an average of less than one acre and by an additional 2.7 acres in the next five years. Table 1.7 shows the reported varieties of grapes currently produced, in alphabetical order:

Though there was one mention of acquiring grapes from other vineyards for quality and blending purposes, Table 1.8 (in alphabetical order) shows a summary of the future plans for varieties in grape production:

Approximately 64% of wineries reported purchasing grapes from other wineries or vineyards to meet the demand for wine production. Respondents who acquired grapes or grape juice from outside of Georgia purchased from California, New York, and North Carolina.

Most (87.5%) of the respondents to this survey reported that they did not sell grapes or grape juice to other wineries and/or vineyards. Wineries were asked about the contractual agreement they had for purchasing grapes, given the choices of long term contract (3+ years), short term contract (less than 3 years), and spot market. There was limited response to the question, but an average of 25.4% of tonnage was described as purchased using the spot market (median 5%).

Table 1.7: Grape Varieties Currently Produced

| Grape Variety | Mentions | Grape Variety | Mentions |
|---|---|---|---|
| Aglianico | 1 | Norton | 4 |
| Albarino | 1 | Petit Manseng | 2 |
| Blau Framish | 1 | Petit Verdot | 2 |
| Cabernet Franc | 11 | Pinot Blanc | 1 |
| Cabernet Sauvignon | 9 | Pinot Grigio | 3 |
| Cabs | 1 | Pinot Noir | 1 |
| Carlos Muscadine | 1 | Riesling | 1 |
| Catawba | 2 | Sangiovese | 1 |
| Chambourcin | 3 | Sauvignon Blanc | 1 |
| Chardonnay | 5 | Scarlett Cabernet | 1 |
| Cynthiana-Norton | 2 | Seyval Blanc | 5 |
| Delicious Muscadine | 1 | Summit Muscadine | 1 |
| Early Fry Muscadine | 1 | Supreme Muscadine | 1 |
| Fry Muscadine | 1 | Sweet Jenny Muscadine | 1 |
| Greuer Veltliner | 1 | Tannat | 3 |
| Ison Muscadine | 1 | Touriga Nacional | 2 |
| Late Fry Muscadine | 1 | Traminette | 3 |
| Malbec | 5 | Vidal | 1 |
| Merlot | 9 | Vidal Blanc | 4 |
| Mourvedre | 1 | Vignoles | 1 |
| Muscadine | 1 | Villard Noir Traminette | 1 |
| Noble Muscadine | 1 | Viognier | 3 |
| Noiret | 1 | | |

Table 1.8: Grape Varieties for Future Production

| Grape Variety | Mentions |
|---|---|
| Cabernet Franc | 2 |
| Cabernet Sauvignon | 1 |
| Catawba | 1 |
| Chambourcin | 1 |
| Chardonnay | 2 |
| Cynthiana-Norton | 1 |
| Hybrids | 1 |
| Malbec | 1 |
| Merlot | 1 |
| Mix – Vinifera and hybirds | 1 |
| Muscadines | 1 |
| Noiret | 1 |
| Norton | 1 |
| Perhaps another S.Italian grape | 1 |
| Petit Manseng | 3 |
| Petit Syrah | 1 |
| Pinotage | 1 |
| Presently not determined | 1 |
| Riesling | 1 |
| Sangiovese | 1 |
| Sauvignon Blanc | 2 |
| Seyval Blanc | 1 |
| Tempranillo | 1 |
| Traminette | 1 |
| Type not yet known | 1 |
| Vidal Blanc | 1 |
| Viognier | 2 |
| White grape variety | 1 |
| Zweigelt | 1 |

A large portion (84.6%) reported that they do not stock or sell wines from other Georgia wineries, though not all answered the question. Of those that did respond, 61.5% reported that they either were interested or perhaps interested in stocking other Georgia produced wines. When queried about possible obstacles in selling other Georgia wines, responses included: legal issues and expensive licensing requirements, transportation of wine from one winery to the other, room in winery, cost, licensing, and pricing and logistics. Another comment indicated that it would dilute their branding or complicate the operation; it is better to collaborate on marketing instead.

Table 1.9 provides the percentage of wine sales at specified price ranges, summing to 100% for each respondent. Over 85% of the wine sold at Georgia wineries and vineyards is priced between $10 and $25 per bottle, with most between $10 and $20, according to the owner responses.

Table 1.9: Average Retail Wine Sales Reported by Owners

| Price Range | Response Avg. |
|---|---|
| Less than $10 per bottle | 5.8% |
| $10-$15 | 31.7% |
| $16-$20 | 35.9% |
| $21-$25 | 17.8% |
| $26-$30 | 6.3% |
| $31-$35 | 1.7% |
| $36-$40 | 0.4% |
| More than $40 per bottle | 0.4% |

When asked about production capabilities, on average, participating wineries and vineyards reported the capability to produce a maximum of 3,170 (median 1,500) cases of wine annually with their present equipment and facilities. Table 1.10 presents anticipated expansion plans for selected aspects of wine production and facilities. The percentages represent the response average given by participating wineries and vineyards when asked about plans to expand over the next three years. They indicated that they plan to expand acreage devoted to grapes by an average of just over 63%. They also plan to expand wine processing equipment and wine storage equipment by 29% and bottling equipment by 19% over the same time period. The smallest expansion plans are for gift shop and restaurant facilities which were indicated as zero.

Owner respondents were asked to indicate how they intend to market and sell their grapes, both now and in the future. One in five (19.0%) of the total number of respondents indicated that they currently market through their own winery, while 38.1% said that they will market through their own winery in the future. The category of personal networking was indicated by approximately one-third (33.3%) of the total and was the same for current and future.

15

Table 1.10: Expansion Plans for Next Three Years

| Category | Response Avg. |
|---|---|
| Acreage devoted to grapes | 63.1 |
| Wine processing equipment | 28.8 |
| Wine storage equipment | 28.8 |
| Bottling equipment | 18.8 |
| Retail facility | 7.5 |
| Event facility | 6.3 |
| Lodging or other amenities | 6.3 |
| Gift shop facility | 0.0 |
| Restaurant facility | 0.0 |

### 1.3.8  Support for Viticulture Area Designation

An American Viticulture Area is a designated grape-growing region in the United States distinguishable by geographic features, with boundaries defined by the United States Department of Treasury Alcohol Tax and Trade Bureau (TTB). The winery and vineyard owners were asked if they would support having American Viticulture Areas in Georgia and more than one-half (57.2%) indicated yes or maybe, with another 19.1% needing more info before expressing support. None specifically indicated that they did not support such a designation, though a large portion left the question unanswered.

Table 1.11: Support for Viticulture Area Designation

| AVA Interest | Percent |
|---|---|
| Yes | 38.1 |
| Unanswered | 23.8 |
| Maybe | 19.1 |
| Need More Info | 19.1 |

### 1.3.9  Obstacles Facing Georgia Wine Industry

Responses to the final question in the Georgia Winery and Vineyard Owners Survey indicate several obstacles faced by Georgia winery operators. The question present in the survey is an open-ended response which allowed for operators to express their opinions. Overall, the responses fell into the following groupings:

- Time, legalities, costs, and investment in developing operation

- Time for Federal Label approval

- Inability to have off-site events where wineries can sell wine

16

- State laws and regulations
- Government intervention
- Getting the word out on the quality of GA wine
- Weather/animal damage to crops
- Need state government managed wine commission or marketing board; should mirror what has been done in neighboring states and around the country
- Need of state support and help with marketing our growing agribusiness

### 1.3.10  Actions to Help Develop Georgia Wine Industry

A question in the Georgia Winery and Vineyard Survey asks owners their opinion about actions that could be taken to help increase the production and sales of Georgia wine. As in previous research conducted by CAED[6], the responses to the question largely parallel responses given to the obstacle question. The responses are listed below:

- Active state program that supports and promotes the Georgia wine industry
- Advertisement and community awareness
- Advertising
- Advice on the growing and production of quality wines from the University of Georgia and the Cooperative Extension Service
- Allowing direct sales of local winery products
- Change rules regulating [previous question] to make it easier for wineries to sell and market their wines in Atlanta area
- Creation of a viticulture position for teaching and research at UGA
- Education of current farmers on the financial side of grape growing and wine making
- Form a Georgia Wine Commission or Marketing Board that is totally managed by State Government. Establish an annual budget to support the effort by using a small portion of alcohol excise taxes to purchase billboards, directional signs, print brochures, and hire a full time individual at the State level who has public relations experience to promote the Georgia Wine Industry

---

[a]Kyle Watts, Kent Wolfe, Archie Flanders and John McKissick, *Wine Industry Survey*, University of Georgia, College of Agricultural and Environmental Sciences, Center for Agribusiness and Economic Development, 2009. Available online at http://www.caes.uga.edu/center/caed/pubs/2009/documents/CR-09-05.pdf.

- Georgia one- or two-day festival license. Currently festivals must be hosted on a winery property. A festival license will give us the opportunity to go to our customers in convenient locations (in metro Atlanta or others) (2)

- Help from the University of Georgia and other area colleges and universities (classes in Viticulture, research)

- If the wineries in Georgia could come together in a State Winegrowers Association run by the membership would be a big step. This would assist us in bringing a unified message relative to the needs and desires of the industry to the State Government

- Legislation that would allow wineries to sell wine at off-site events, i.e. festivals

- Local legislation to allow more wineries in counties that do not currently allow it

- Non-exclusive representation by distribution agents

- Reform of the alcohol rules and regulations in the state to facilitate and encourage expansion of the wine business

- Shipping out of state

- Signs permit by state

- State marketing support (2)

- State should help with marketing the industry as it does other agricultural businesses! (our own association has done some marketing of Georgia fine wines.)

- State should support funding (matching to the private money the Winegrowers have raised for viticulture and enology chair at the U. Office (We appreciate the support of the Dean of the College of Agriculture and have hosted 6 interns over 5 years in our vineyards and could be done to encourage training of young Georgia winemakers

- State wine highway open to all wineries

- State winery council

- The formation of a state wide all-inclusive Georgia Wine Organization Legislation that would give the state wide Wine Organization support, i.e. logistics, planning and advertising

## 1.4   Visitor Survey Results

The purpose of this section is to provide descriptive statistics on information from the Georgia Winery and Vineyard Visitor Survey. Participating wineries asked visitors if they would be willing to fill out a short survey. A total of 334 Georgia Winery and Vineyard Visitors filled out surveys for the data used in the study, though all visitors did not answer all questions. These results should be interpreted with caution due to the small sample size and non-random survey sample.

### 1.4.1   Demographic Profile of Visitors

#### Age

The average age of the respondents was 46.6 years old with respondents ranging from 21 to 83 years of age. Those who responded to the survey tended to be more female (62%) than male (38%) which is in line with the findings from previous CAED study.[7]

#### Educational Attainment

Just over 67% of the respondents reported being employed full-time with 21.7% being retired. Approximately 11% were either employed part-time (4.0%) or were students (7.0%). When asked about highest level of educational attainment, 40.9% reported having completed a 4-year college degree, 32.2% have a graduate or professional degree, 20.3% had a 2-year college degree or technical degree. The final 6.6% had a high school degree or equivalent.

#### Racial/Ethnic Composition

When asked to describe their race, most responded that they were of white ethnicity (92.9%), with the next highest category of Black or African-American at 3.2%. The Asian and Other race categories each respectively made up 1.8% of the respondents, and .4% describes as Native Hawaiian or other Pacific Islander. In reference to Hispanic ethnicity, most were not Spanish, Hispanic, or Latino in origin (96.3%).

#### Household Income Range

Table 1.12 displays percentages for ranges of annual household incomes before taxes for survey participants. The highest response range is that of $150,000 or more, followed by $75,000 to $99,999. Nearly two out of three (63.4%) of all the respondents indicated that they have incomes of $75,000 or more while less than ten percent have incomes under $35,000 per year. In comparison, the U.S. Census Bureau's American Community Survey finds that approximately 31.3% of all Georgians have incomes of $75,000 or more, and 36% have incomes under $35,000 per year.

---

[7]Earlier referenced CAED study also found the results similar to information found in the Adams Wine Handbook from 2007 which reported that wine drinkers are 42.4% male and 57.6% female.

Table 1.12: Visitor Household Income

| Income Range | Percent |
|---|---|
| $0-$24,999 | 4.9 |
| $25,000-$34,999 | 3.7 |
| $35,000-$49,999 | 11.9 |
| $50,000-$74,999 | 16.0 |
| $75,000-$99,999 | 17.2 |
| $100,000-$124,999 | 16.4 |
| $125,000-$149,999 | 12.3 |
| $150,000 or more | 17.5 |

## 1.4.2   Wine Consumption Frequency

Figure 1.3 shows the drinking frequency of winery and vineyard visitors. Nearly three out of four visitors do not consume wine on a daily basis (73.5%). Those who consume wine 2-3 times per week (27.9%) represent the largest percentage, followed closely by daily at 26.5%. Next largest is weekly (19.8%), 2-3 times per month (12.4 %), monthly (9.7%,) and a small group consuming less than monthly (3.7%).



Figure 1.3: Wine Consumption Frequency

## 1.4.3   Wine Consumption Occasions

Visitors were asked on which occasions they usually drink wine and were asked to include multiple responses. The top response categories were when socializing (78.1%), special occasions or holidays (74.2%) and meals at home (71.2%) were the top three. Just over one-third (34.1%) reported drinking wine at bars.

## 1.4.4   Visitor Wine Preference

Given a choice between dry or sweet wine, visitors were asked to select which they usually drink. Nearly sixty-seven (66.4%) percent usually drink dry wine, with the remaining 33.4% indicating a preference for sweet wine. The next series of questions asked about the type that they usually drink. The top selections included red wine (63.5%) and white wine (40.1%). Muscadine, sparkling, blush, dessert wine, and other fruit flavored wine received fewer responses. Further, they were asked to list their favorite variety of wine.[8]

---

[8]Since participants were asked to list their one favorite, we selected only the first response as the favorite, though there were a few that listed more than one. Researchers also corrected spelling errors and elaborated on abbreviated or names in jargon format.

20

Table 1.13: Visitor Wine Preference

| Favorite | Percentage | Favorite | Percentage |
|---|---|---|---|
| Blackberry-Red | 0.4% | Pinot Grigio | 5.4% |
| Blends | 0.4% | Pinot Grigio Rose | 0.4% |
| Blueberry | 0.4% | Pinot Noir | 6.4% |
| Blush | 2.1% | Prosecco | 0.4% |
| Cabernet Blend | 0.7% | Red | 18.9% |
| Cabernet Franc | 0.7% | Red Blends | 0.4% |
| Cabernet Sauvignon | 11.4% | Red Wine | 0.4% |
| Cabernets | 0.4% | Riesling | 2.9% |
| Chambourcin | 0.4% | San Sebastian | 0.4% |
| Champagne | 0.4% | Sangiovese | 0.7% |
| Chardonnay | 3.6% | Sauvignon Blanc | 3.9% |
| Columbia Crest | 0.4% | Shirah | 0.4% |
| Cynthiana | 0.4% | Shiraz | 0.4% |
| Dessert | 0.7% | Spanish Red | 0.4% |
| Dry Red | 0.4% | Sparkling | 0.7% |
| Fla Joe | 0.4% | Sweet | 1.4% |
| Fruit Flavor | 0.4% | Tempranillo | 0.4% |
| Full Bodied | 0.4% | Traminette | 0.4% |
| Georgia Grown Blends | 0.4% | Traveler | 0.4% |
| Malbec | 2.1% | Unoaked Chardonnay | 0.4% |
| Merlot | 5.7% | Viognier | 1.1% |
| Moscato | 0.4% | Vitiano | 0.7% |
| Mountain Cyn | 0.4% | White Dry | 0.4% |
| Muscadine | 8.2% | White Merlot | 0.4% |
| Norton | 1.4% | White Wine | 6.8% |
| Petit | 1.4% | White Zinfandel | 1.4% |
| Petit Manseng | 0.7% | White blend Merlot | 0.4% |

### 1.4.5  Visitor Wine Purchases

Table 1.14 reveals where surveyed visitors purchase wine. When participants were asked to answer where they most purchase wine from, a majority (54.6%) bought from a grocery store or supermarket. Nearly one in five (19.1%) purchased from a winery or package store (17.1%). The small portion that mentioned "other" purchase locations (3.4%) that included club stores, wholesale and by mail. During the past month,

Table 1.14: Visitor Wine Purchase Store Type

| Wine Purchase Store Type | Percent |
|---|---|
| Grocery Store/Supermarket | 54.6 |
| Winery | 19.1 |
| Package Store | 17.1 |
| Restaurant/Bar | 5.5 |
| Other (please specify) | 3.4 |
| Internet | 0.3 |

respondents reported purchasing an average of 7.8 bottles, .86 boxes of wine and 6.4 glasses of wine. Table 1.15 indicates the price ranges for bottled wine purchases reported during the last month. The highest response range was that of $10-$15, which was reported at an average of 40.5%. The next highest response was that of the $16 to $20 price range at 22.3%, followed by less than $10 at 17.2%. Another important question was included to find out how much visitors spend on wine each month. The average visitor surveyed reported spending approximately $108.29 on wine during a typical month. Respondents who reported purchasing wine in the

Table 1.15: Price Ranges for Bottled Wine

| Price Range | Percent |
|---|---|
| Less than $10 | 17.2 |
| $10 to $15 | 40.5 |
| $16 to $20 | 22.3 |
| $21 to $25 | 10.2 |
| $26 to $30 | 4.8 |
| $31 to $35 | 1.6 |
| $36 to $40 | 0.6 |
| Greater than $40 | 1.6 |

previous month were asked from what regions did these wines originate. California (32.6%) and Georgia (29.9%) purchases are the highest response average categories. At nearly half that amount are the international wine purchases (15.5%). See Table 1.16 for details.

Table 1.16: Geographic Origin of Wine Purchased

| Geographic Origin of Wine Purchased | Percent Avg. |
|---|---|
| California | 32.6 |
| Georgia | 29.9 |
| International | 15.5 |
| Southeast | 5.5 |
| Washington/Oregon | 5.0 |
| Midwest | 2.0 |
| Southwest | 0.5 |
| Northeast | 0.4 |
| New York | 0.3 |

## 1.4.6  Reason for Visiting Winery and Vineyard

One important question from the visitor surveys asks people what brings them to visit the winery. Approximately 43% of all respondents were visiting the winery or vineyard as the primary reason. The other 57% were visiting the winery and/or vineyard for another reason, perhaps as part of an overall attraction to the area such as scenery or a festival. The results indicate that 67% of out-of-state visitors are coming to the winery as a secondary reason. More than one-half (54.0%) of the Georgia resident visitors are visiting as the primary reason.

Table 1.17 highlights responses to the question about how familiar participants are with Georgias winery and vineyard industry. The highest response was that in which 33.9% reported "Not very" as their choice, followed by "Somewhat" at 30.8%, "A little" (20.9%), and "Very" at 14.4%. Georgia residents are more familiar with the industry than out-of-state residents. Only 2.5% of out-of-state visitors are very familiar with Georgias wine industry, with more than one-half (53.2%) indicating that they were "Not very" familiar. Of those that answered the question about whether

Table 1.17: Familiarity with Georgia Wine Industry

| | All respondents | Georgia Residents | Non-GA Residents |
|---|---|---|---|
| Not very | 33.9 | 24.2 | 53.2 |
| A little | 20.9 | 20.6 | 22.8 |
| Somewhat | 30.8 | 35.6 | 21.5 |
| Very | 14.4 | 19.6 | 2.5 |

they attended any other wineries and vineyards while in the area, 41% indicated that they did not on this trip. The remaining 58.2% visited at least one other wineries while on their current trip. Respondents that reported visiting a winery had an average attendance of 4.1 times per year. Of those answering the question about winery visits, some also answered a similar question regarding wine festival attendance and indicated that they had attended an average of 1.9 festivals in Georgia. This was

approximately 28.8% of visitors that reported attending a wine festival.

### 1.4.7   Distance Visitors Traveled

Table 1.18 indicates that the typical Georgia winery visitor travels 100 miles or less. In fact, 65.6% of visitors come from less than 100 miles. Just over one in five (22.5%) traveled between 100 and 500 miles, and 11.9% of visitors traveled 500 miles or more. The winery and vineyard visitors reported an average visit of 3.0 days to the area. Of those visiting with the winery and vineyard as their primary purpose, 71% of visitors indicated that they were not staying overnight for their visit. In contrast, of those with another purpose for their visit, 63.1% said that were planning to stay overnight. This most closely matches tourism research by the Georgia Department of Economic Development, which found that visitor trips to Georgia that included a visit to a winery included an overnight stay 64% of the time.[9]

Table 1.18: Visitor Miles Traveled

| Miles | Percent |
|---|---|
| 0 to 50 | 34.0 |
| 50 to 100 | 31.6 |
| 100 to 500 | 22.5 |
| 500 to 1,000 | 7.4 |
| 1,000 to 2,000 | 3.2 |
| Over 2,000 | 1.4 |

### 1.4.8   Visitor Lodging

Table 1.19 shows where survey respondents indicated that they were likely to stay during their overnight visit, broken down by whether the winery and vineyard was primary purpose of trip or not. Those with winery visit as their primary purpose chose mostly to lodge at a Hotel/Motel (28.6%) or in cabins (25.0%). Those with another purpose for their visit largely chose cabins (45.7%), followed by friends and/or family (21.0%).

The typical visitor party size was 3 people. Respondents reported spending an average of 69.6% (median 80%) within a 10-15 mile radius of the winery their party was currently visiting. The following set of tables (Tables 1.20-1.21) were derived from the visitor survey and contains visitor expenditure data that is required to estimate the portion of economic contribution due to visitor expenditures. Information is

---

[9]Note that this research is not conducted in a method exactly replicating this survey. Similarities should be noted, but some of the definitions differ. According to the Department of Economic Development, they analyze the total number of trips taken that listed a winery as an activity in which they participate. This measure would not include the category listed as "Visiting Friends and Family ". The breakdown listed above is based on spending by those visitors and their classification as an overnight or day trip visitor.

Table 1.19: Lodging Choice by Trip Purpose

|              | Trip Purpose | |
| --- | --- | --- |
| Lodging Type | Winery | Other |
| Bed & Breakfast | 14.3 | 7.4 |
| Cabin | 25.0 | 45.7 |
| Friends/Family | 17.9 | 21.0 |
| Hotel/Motel | 28.6 | 12.4 |
| Other | 14.3 | 7.4 |
| RV Park/Camping | 0.0 | 6.2 |

separated out by day and overnight visitors (Table 1.20)and by those for whom the primary purpose was the winery/vineyard or not (Table 1.21).

Table 1.20: Spending Per Day by Overnight and Day Visitors

|          | Overnight Visitors | Day Visitors |
| --- | --- | --- |
| Category | Spending/day ($) | Spending/day ($) |
| Restaurant | 24.27 | 9.58 |
| Grocery | 11.76 | 4.24 |
| Souvenirs | 10.31 | 5.62 |
| Fuel | 12.42 | 6.69 |
| Entertainment | 6.32 | 3.47 |
| Bed & Breakfast | 98.00 | n/a |
| Cabin | 70.26 | n/a |
| Hotel/Motel | 74.63 | n/a |
| RV/Camping | 40.00 | n/a |
| Other Lodging | 110.00 | n/a |

## 1.5 Economic Contribution

The economic contribution of grape production to the State of Georgia represents the value of grapes produced at the wineries/vineyards and the value of grapes grown by other in-state growers which are used for wine production at Georgia wineries. Very few wineries purchased grapes from out-of-state which are not included in this study because they do not apply to the state impact. Based on the survey responses applied to all wineries and vineyards, the total average value of grapes produced by all Georgia wineries that are used for their own production needs amounted to $2,532,361. Respondents also indicated that they purchase grapes from other Georgia growers for wine production. The estimated total of purchased grapes is $836,586. Combining the value for both categories, grapes produced at own winery, and grapes produced by

25

Table 1.21: Annual Visitor Spending by Winery Primary Purpose and Other

| Category | Overnight Visitors | | Day Visitors | |
|---|---|---|---|---|
| | Winery ($) | Other ($) | Winery ($) | Other ($) |
| Restaurant | 1,185,647 | 3,898,526 | 468,006 | 1,538,850 |
| Grocery | 574,504 | 1,889,026 | 185,647 | 681,077 |
| Souvenirs | 503,668 | 1,656,111 | 274,550 | 902,749 |
| Fuel | 606,746 | 1,995,043 | 326,822 | 1,074,625 |
| Entertainment | 308,747 | 1,015,191 | 169,518 | 169,518 |
| Bed & Breakfast | 684,138 | 1,166,474 | n/a | n/a |
| Cabin | 858,092 | 5,155,430 | n/a | n/a |
| Hotel/Motel | 1,041,620 | 1,480,509 | n/a | n/a |
| RV/Camping | 0 | 396,438 | n/a | n/a |
| Other Lodging | 767,910 | 1,309,307 | n/a | n/a |

other Georgia grape growers, indicates the direct impact of grape production which is $3,368,947. Table 1.22 presents results of the analysis of the contribution of grapes

Table 1.22: Grape Production Contribution

| Contribution Type | Employment (#) | Labor Income ($) | Value Added ($) | Output ($) |
|---|---|---|---|---|
| Direct Effect | 19.2 | 2,539,909 | 1,880,081 | 3,368,947 |
| Indirect Effect | 8.7 | 318,842 | 492,793 | 871,090 |
| Induced Effect | 16.6 | 697,198 | 1,279,167 | 2,143,426 |
| Total Effect | 44.5 | 3,555,949 | 3,652,041 | 6,383,463 |
| State/Local Taxes ($) | | | | 190,267 |

produced in Georgia for Georgia wineries. The direct contribution of $3.4 million worth of output estimated from the responses in the winery survey is similar to the $3.0 million represented in the Georgia Farm Gate Fruits and Nuts Report for 2011.[10] The indirect portion is $871,090 and represents the sales contribution of the supporting industries of grape production (i.e. ag inputs). The next category is the induced effect of $2.1 million, which accounts for the employee spending of those working in both the direct and indirect businesses. Summing all together generates a total state output contribution of $6.4 million.

Labor income represents wages and benefits for employees and proprietary income. A total of $3.6 million in labor income is generated from those who work directly in grape production or are associated in an indirect way as well as the induced effects. Combined, these comprise a total of 44.5 jobs involved in grape production and related industries. A total value added impact of $3.7 million is generated by grape

---

[10]See www.caed.uga.edu for the online report.

production and related industries. Based on these figures, grape production generates $190,267 in state and local taxes.

The second component of the three part analysis is the contribution of wineries minus grape production. The first component accounted for the grape production alone; therefore the economic contribution presented in Table 1.23 do not include grape production. The figures also do not account for the visitor expenditure contribution generated by the wineries, which will be explored in the next component. The direct contribution is $15.1 million in sales or output, with indirect contribution of $5.6 million worth of output, and $2.7 million in induced or employee spending contribution. Summing all, $23.4 million worth of total contribution to output is generated. Labor income accounts for $4.4 million for a total employment of 95.7 jobs that can be attributed to wineries in the economy. The total value added component accounts for $7.1 million. Based on these figures, wineries (less grape production and visitor spending) account for $1,143,202 worth of state and local tax revenue. The

Table 1.23: Winery Contribution

| Contribution Type | Employment | Labor Income | Value Added | Output |
|---|---|---|---|---|
| | (#) | ($) | ($) | ($) |
| Direct Effect | 44.9 | 1,387,723 | 2,289,064 | 15,050,425 |
| Indirect Effect | 29.7 | 2,088,637 | 3,140,902 | 5,621,051 |
| Induced Effect | 21.1 | 891,309 | 1,631,433 | 2,734,154 |
| Total Effect | 95.7 | 4,367,668 | 7,061,399 | 23,405,629 |
| State/Local Taxes ($) | | | | 1,143,202 |

following tables (1.24 and 1.25) present the estimates of the economic contribution generated by the spending pattern of those visiting wineries and vineyards, with the first highlighting those who said that their primary purpose for visiting the area was the winery/vineyard and the second, those who stated some other primary purpose for visiting the area.[11] The total contribution of output from the visitors whose primary purpose is to visit the winery or vineyard is $12.7 million. A total labor income contribution of $4.3 million in wages and benefits to employees and proprietary income is contributed to the economy by this spending. A total of 125.4 jobs are involved.. A total value added contribution to the state economy of $6.8 million is generated from expenditures associated with the primary purpose winery visitors. Finally, the visitors generate $685,540 worth of state and local taxes. In reference to the visitors that came to the area with another purpose, but visited the winery or vineyard, the total contribution of output or sales is $39.0 million. There was a total labor income contribution of $13.3 million in wages and benefits to employees and proprietary income contributed to the economy through this spending. A total of

---

[11] Generally, the most conservative estimate of economic contribution would narrow down to only those who came with the event/activity as their primary reason for visiting the area. For the purpose of this study, we are looking at all of the visitors - both those who came as primary purpose and those who came with other purpose. Looking at both provides a low and a high estimate of what the potential contribution might be, depending on how it would be defined.

Table 1.24: Primary Purpose Visitor Spending

| Contribution Type | Employment | Labor Income | Value Added | Output |
|---|---|---|---|---|
| | (#) | ($) | ($) | ($) |
| Direct Effect | 87 | 2,510,034 | 3,609,905 | 7,366,916 |
| Indirect Effect | 18.1 | 939,767 | 1,654,649 | 2,730,485 |
| Induced Effect | 20.3 | 853,633 | 1,562,796 | 2,618,937 |
| Total Effect | 125.4 | 4,303,434 | 6,827,350 | 12,716,338 |
| State/Local Taxes ($) | | | | 685,540 |

389.9 jobs within the state economy are estimated to be attributed to this spending. A total value added contribution to the state economy of $6.8 million is generated from expenditures associated with the primary purpose winery visitors. Finally, these visitors account for approximately $2.1 million worth of state and local taxes. Table

Table 1.25: Other Purpose Visitor Spending

| Contribution Type | Employment | Labor Income | Value Added | Output |
|---|---|---|---|---|
| | (#) | ($) | ($) | ($) |
| Direct Effect | 272.4 | 7,855,220 | 11,068,725 | 22,613,402 |
| Indirect Effect | 54.7 | 2,838,468 | 5,058,352 | 8,318,997 |
| Induced Effect | 62.8 | 2,645,591 | 4,843,424 | 8,116,617 |
| Total Effect | 389.9 | 13,339,279 | 20,970,501 | 39,049,016 |
| State/Local Taxes ($) | | | | 2,051,270 |

1.26 presents the total economic contribution summary for Georgia wineries and vineyards and the associated operations. The overall contribution was presented in the form of three components; grape production, wineries (without grape production or visitor spending), and visitor expenditure, delineated between those who came with the winery as the primary purpose for their visit to the area and those who did not come to the area with the primary purpose of visiting the winery. The total contribution within the Georgia economy represented in Table 1.26 is the sum of all of these components, including both types of visitors as mentioned above. A total of grape production, wineries, and visitors of $81.6 million worth of output is contributed to the Georgia economy. A total labor income of $25.6 million represents the wages and benefits for employees and proprietor income. Overall, 655.6 jobs can be attributed to Georgia wineries and vineyards and their associated operations and visitors. Total value added accounts for $38.5 million. This total contribution generates approximately $4.1 million worth of tax revenue to the state and local governments.

28

Table 1.26: Total Contribution of All Components

| Contribution Type | Employment | Labor Income | Value Added | Output |
|---|---|---|---|---|
| | (#) | ($) | ($) | ($) |
| Direct Effect | 423.5 | 14,292,886 | 18,847,775 | 48,399,690 |
| Indirect Effect | 111.3 | 6,185,713 | 10,346,696 | 17,541,623 |
| Induced Effect | 120.8 | 5,087,731 | 9,316,820 | 15,613,135 |
| Total Effect | 655.6 | 25,566,330 | 38,511,291 | 81,554,448 |
| State/Local Taxes ($) | | | | 4,070,280 |

## 1.6   Conclusion

Based on survey information of visitors collected by participating winery and vineyard businesses and through the Winegrowers Association of Georgia of the owners, the Center for Agribusiness and Economic Development (CAED) estimated the economic contribution of Georgia Wineries and Vineyards from a three-component perspective. This perspective included an analysis of grape production, an estimation of output or sales, and reported spending from all types of visitors to the area. From analyzing these operational and descriptive characteristics of Georgias wineries and vineyards and spending patterns of visitors to these facilities, CAED constructed a winery profile, visitor profile, and range of economic contribution of this important agribusiness sector. Overall, the Georgia Winery and Vineyard and related sectors, along with visitor spending contributes up to $81.6 million in output, 655.6 jobs throughout the states economy, and $4.1 million in state and local tax revenue.

29



# The Center for Agribusiness & Economic Development

The Center for Agribusiness and Economic Development is a unit of the College of Agricultural and Environmental Sciences of the University of Georgia, combining the missions of research and extension. The Center has among its objectives:

> To provide feasibility and other short term studies for current or potential Georgia agribusiness firms and/or emerging food and fiber industries.

> To provide agricultural, natural resource, and demographic data for private and public decision makers.

To find out more, visit our Web site at: http://www.caed.uga.edu

Or contact:

Dr. Kent Wolfe, Director
Center for Agribusiness and Economic Development
Lumpkin House
The University of Georgia
Athens, Georgia 30602-7509
Phone (706)542-2434

The University of Georgia and Fort Valley State University, and the U.S. Department of Agriculture and counties of the state cooperating. The Cooperative Extension Service offers educational programs, assistance and materials to all people without regard to race, color, national origin, age, sex or disability.

An equal opportunity/affirmative action organization committed to a diverse work force.

---

**Report Number: CR-13-06**                            **September 2013**

Issued in furtherance of Cooperation Extension Acts of May 8 and June 30, 1914, the University of Georgia College of Agricultural and Environmental Sciences, and the U.S. Department of Agriculture cooperating.

**J. Scott Angle, Dean and Director**

**PRESERVATION OF CONSTITUTIONAL RIGHTS IN CONNECTION
WITH REZONING OF 114.147 ACRES ON  0, 4611, 4627 Guth Road & 0, 4561, 4613 J M
Turk Road & 4590, 4601, 4610 Stanley Road | Rezone | from Agricultural Residential-III
(AR-III) to Planned Residential Development (PRD) | on a 114.147± acre tract located on
the east side of J M Turk Road at its intersection with Guth Road | Zoned AR-III; Tax
Parcels 15043 000027, 000201, 000128 & 15044 000035, 15044 000127, 15043 000109 &
15044 000035B, 000043, 000100 | Proposed Use: 256-unit residential development | **
Commission District 1 | Steven P. Gilliam, applicant**

As an owner of property adjoining the Subject Property, I respectfully submit that approving the zoning request would constitute an arbitrary, irrational abuse of discretion and an unreasonable use of the zoning power because the approval bears no substantial relationship to the public health, safety, morality or general welfare of the public and substantially harms the adjoining property owners in violation of the due process and equal protection rights of said adjoining property owners guaranteed by the Fifth Amendment and Fourteenth Amendment of the Constitution of the United States, and Article I, Section I, Paragraph I and Article I, Section III, Paragraph I of the Constitution of the State of Georgia.

Further, I respectfully submit that approving the rezoning would be unconstitutional and would discriminate in an arbitrary, capricious and unreasonable manner between owners of similarly situated property in violation of Article I, Section III, Paragraph I of the Constitution of the State of Georgia and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

Allowance of the development as proposed is not based upon any clear and articulable standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983 grants the Board of Commissioners the power to zone and rezone. That power must be fairly exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority who have the power to zone and rezone is a violation of the guarantees of free speech under Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First Amendment of the Constitution of the United States of America. Further, said limitations are in violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United States of America as well as the due process clauses of the Constitution of Georgia, 1983 and the Constitution of the United States of America.

Respectfully submitted,

G. K Conley

Address

4621 Stanly Rd
Flowery Branch GA 30542


EXHIBIT
D

**PRESERVATION OF CONSTITUTIONAL RIGHTS IN CONNECTION
WITH REZONING OF 114.147 ACRES ON  0, 4611, 4627 Guth Road & 0, 4561, 4613 J M
Turk Road & 4590, 4601, 4610 Stanley Road | Rezone | from Agricultural Residential-III
(AR-III) to Planned Residential Development (PRD) | on a 114.147± acre tract located on
the east side of J M Turk Road at its intersection with Guth Road | Zoned AR-III; Tax
Parcels 15043 000027, 000201, 000128 & 15044 000035, 15044 000127, 15043 000109 &
15044 000035B, 000043, 000100 | Proposed Use: 256-unit residential development | \*\*
Commission District 1 | Steven P. Gilliam, applicant**

As an owner of property adjoining the Subject Property, I respectfully submit that
approving the zoning request would constitute an arbitrary, irrational abuse of discretion and an
unreasonable use of the zoning power because the approval bears no substantial relationship to
the public health, safety, morality or general welfare of the public and substantially harms the
adjoining property owners in violation of the due process and equal protection rights of said
adjoining property owners guaranteed by the Fifth Amendment and Fourteenth Amendment of
the Constitution of the United States, and Article I, Section I, Paragraph I and Article I, Section
III, Paragraph I of the Constitution of the State of Georgia.

Further, I respectfully submit that approving the rezoning would be unconstitutional and
would discriminate in an arbitrary, capricious and unreasonable manner between owners of
similarly situated property in violation of Article I, Section III, Paragraph I of the Constitution of
the State of Georgia and the Equal Protection Clause of the Fourteenth Amendment of the
Constitution of the United States.

Allowance of the development as proposed is not based upon any clear and articulable
standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of
delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia
Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983
grants the Board of Commissioners the power to zone and rezone. That power must be fairly
exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and
violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority
who have the power to zone and rezone is a violation of the guarantees of free speech under
Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First
Amendment of the Constitution of the United States of America. Further, said limitations are in
violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six
of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United
States of America as well as the due process clauses of the Constitution of Georgia, 1983 and the
Constitution of the United States of America.

Respectfully submitted,

Kathleen Conley

Address
4621 Stanley Rd
Flowery Branch, GA 30542

Allowance of the development as proposed is not based upon any clear and articulable standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983 grants the Board of Commissioners the power to zone and rezone. That power must be fairly exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority who have the power to zone and rezone is a violation of the guarantees of free speech under Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First Amendment of the Constitution of the United States of America. Further, said limitations are in violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United States of America as well as the due process clauses of the Constitution of Georgia, 1983 and the Constitution of the United States of America.

Respectfully submitted,

Ben and Trish Tuk.

Address

5122 Deer Creek Ct
Flowery Branch, GA 30542

## PRESERVATION OF CONSTITUTIONAL RIGHTS IN CONNECTION WITH REZONING OF 114.147 ACRES ON   0, 4611, 4627 Guth Road & 0, 4561, 4613 J M Turk Road & 4590, 4601, 4610 Stanley Road | Rezone | from Agricultural Residential-III (AR-III) to Planned Residential Development (PRD) | on a 114.147± acre tract located on the east side of J M Turk Road at its intersection with Guth Road | Zoned AR-III; Tax Parcels 15043 000027, 000201, 000128 & 15044 000035, 15044 000127, 15043 000109 & 15044 000035B, 000043, 000100 | Proposed Use: 256-unit residential development | ** Commission District 1 | Steven P. Gilliam, applicant

As an owner of property adjoining the Subject Property, I respectfully submit that approving the zoning request would constitute an arbitrary, irrational abuse of discretion and an unreasonable use of the zoning power because the approval bears no substantial relationship to the public health, safety, morality or general welfare of the public and substantially harms the adjoining property owners in violation of the due process and equal protection rights of said adjoining property owners guaranteed by the Fifth Amendment and Fourteenth Amendment of the Constitution of the United States, and Article I, Section I, Paragraph I and Article I, Section III, Paragraph I of the Constitution of the State of Georgia.

Further, I respectfully submit that approving the rezoning would be unconstitutional and would discriminate in an arbitrary, capricious and unreasonable manner between owners of similarly situated property in violation of Article I, Section I, Paragraph I of the Constitution of the State of Georgia and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

Allowance of the development as proposed is not based upon any clear and articulable standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983 grants the Board of Commissioners the power to zone and rezone. That power must be fairly exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority who have the power to zone and rezone is a violation of the guarantees of free speech under Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First Amendment of the Constitution of the United States of America. Further, said limitations are in violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United States of America as well as the due process clauses of the Constitution of Georgia, 1983 and the Constitution of the United States of America.

Respectfully submitted,

_Donjmt Horsg_
_Diane Horsley_

Address
5123 Deer Creek Ct
Flowery Branch, GA
30542

**PRESERVATION OF CONSTITUTIONAL RIGHTS IN CONNECTION
WITH REZONING OF 114.147 ACRES ON   0, 4611, 4627 Guth Road & 0, 4561, 4613 J M Turk
Road & 4590, 4601, 4610 Stanley Road | Rezone | from Agricultural Residential-III (AR-III) to
Planned Residential Development (PRD) | on a 114.147± acre tract located on the east side of J M
Turk Road at its intersection with Guth Road | Zoned AR-III; Tax Parcels 15043 000027, 000201,
000128 & 15044 000035, 15044 000127, 15043 000109 & 15044 000035B, 000043, 000100 |
Proposed Use: 256-unit residential development | ** Commission District 1 | Steven P. Gilliam,
applicant**

As an owner of property adjoining the Subject Property, I respectfully submit that approving the zoning request would constitute an arbitrary, irrational abuse of discretion and an unreasonable use of the zoning power because the approval bears no substantial relationship to the public health, safety, morality or general welfare of the public and substantially harms the adjoining property owners in violation of the due process and equal protection rights of said adjoining property owners guaranteed by the Fifth Amendment and Fourteenth Amendment of the Constitution of the United States, and Article I, Section I, Paragraph I and Article I, Section III, Paragraph I of the Constitution of the State of Georgia.

Further, I respectfully submit that approving the rezoning would be unconstitutional and would discriminate in an arbitrary, capricious and unreasonable manner between owners of similarly situated property in violation of Article I, Section III, Paragraph I of the Constitution of the State of Georgia and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

Allowance of the development as proposed is not based upon any clear and articulable standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983 grants the Board of Commissioners the power to zone and rezone. That power must be fairly exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority who have the power to zone and rezone is a violation of the guarantees of free speech under Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First Amendment of the Constitution of the United States of America. Further, said limitations are in violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United States of America as well as the due process clauses of the Constitution of Georgia, 1983 and the Constitution of the United States of America.

Respectfully submitted,

*Jamie Phillips*

Address

4607 J.M. Turk Rd.
Flowery Branch, Ga. 30542

jamiephillips4607@icloud.com

PRESERVATION OF CONSTITUTIONAL RIGHTS IN CONNECTION WITH REZONING OF 11731 ACRES ON ± 0, 4601, 4627 Guth Road & 0, 4561, 4613 J M Turk Road & 4590, 4601, 4610 Stanley Road / Rezone / from Agricultural Residential III (AR-III) to Planned Residential Development (PRD) on 11731± acres located on the east side of J N Turk Road at its intersection with Guth Road / Zones AR-III / Tax Parcels 15043 000032, 000109, 000138, 000201 & 15044 000035, 000035B, 000043, 000100, 000127

BY _____ Thompson O'Brien Kemnler & Nasuti PC

As an owner of property adjoining the Subject Property, I respectfully submit that approving the zoning request would constitute an arbitrary, irrational abuse of discretion and an unreasonable use of the zoning power because the approval bears no substantial relationship to the public health, safety, morality or general welfare of the public and substantially harms the adjoining property owners in violation of the due process and equal protection rights of said adjoining property owners guaranteed by the Fifth Amendment and Fourteenth Amendment of the Constitution of the United States, and Article I, Section I, Paragraph I and Article I, Section III, Paragraph I of the Constitution of the State of Georgia.

Further, I respectfully submit that approving the rezoning would be unconstitutional and would discriminate in an arbitrary, capricious and unreasonable manner between owners of similarly situated property in violation of Article I, Section III, Paragraph I of the Constitution of the State of Georgia and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

Allowance of the development as proposed is not based upon any clear and articulable standards and is an unreasonable exercise of discretion resulting in an unlawful exercise of delegated authority in violation of Article IX, Section II, Paragraph IV of the Georgia Constitution.

Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983 grants the Board of Commissioners the power to zone and rezone. That power must be fairly exercised. Based on this element of fairness, the Zoning Ordinance for Hall County, Georgia and violate Article IX, Section II, Paragraph 4 of the Constitution of the State of Georgia - 1983.

Any limitation on the time for presentation of the issues before the governing authority who have the power to zone and rezone is a violation of the guarantees of free speech under Article I, Section I, Paragraph 5 of the Constitution of the State of Georgia, 1983 and the First Amendment of the Constitution of the United States of America. Further, said limitations are in violation of the right to petition and assemble, in violation of Article I, Section I, Paragraph Six of the Constitution of Georgia, 1983 and the First Amendment of the Constitution of the United States of America as well as the due process clause of the Constitution of Georgia, 1983 and the Constitution of the United States of America.

Respectfully submitted,

*[signature]*

Address
5016 Deer Creek Ct
Flowery Branch, GA 30542

⚜ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**

JASON J. DEAL
NOV 12, 2024 04:59 PM

*Charles Baker*

Charles Baker, Clerk
Hall County, Georgia

## IN THE SUPERIOR COURT OF HALL COUNTY
## STATE OF GEORGIA

MARK DOUGLAS FAUL,                          :
ARROWQUEST SERVICES, Inc.,                  :
d/b/a MULBERRY SPRINGS                       :
VINEYARD AND WINERY, ERIK                    :
CONOLY, JAMIE PHILLIPS, JARED                :
MELENDEZ, KATIE MAUREEN                      :
MELENDEZ, MIKE MORTON, LISA                  :
MORTON, WILLIAM DOUCHER, EMILY :
DOUCHER, JIM GRAFF, LAURA GRAFF, :
NANCY WINSLOW, TOMMY                         :
CHANNELL, LESLIE CHANNELL,                   :
WAYNE DOWNEY,CAROLE DOWNEY,                  :
BRETT BLACK, JAN BLACK, BRET                 :
CESAK, AMBER CESAK, CAROLE                   :
BRANUM, GREG EVERETT, KATHY                  :
EVERETT, BEN TULE, DOUG HORSLEY,:
JAKE TERRELL, HEATHER TERRELL,               :
WALT PIMENTEL and WHITNEY                    :
PIMENTEL,                                     :
                                              :
    Petitioners,                           :
                                              :
                                              :    Civil Action File No. _____
                                              :
HALL COUNTY AND THE HALL                      :
COUNTY BOARD OF COMMISSIONERS, :
RICHARD HIGGINS AS CHAIRPERSON, :
AND BILLY POWELL, GREGG POOLE,               :
AND JEFF STOWE IN THEIR OFFICIAL :
CAPACITIES, KATHY COOPER                      :
AS MEMBERS OF THE                             :
HALL COUNTY COMMISSION, AND                   :
BETH GARMON ON HER CAPACITY                   :
AS DIRECTOR OF PLANNING AND                   :
ZONING OF HALL COUNTY, GEORGIA, :
AND BUDDY STANLEY, GLORIA STANLEY,
RANDY JONES, TRAVIS LEE LITTLE,              :
ROGER LITTLE, CATHY LITTLE,                   :
ROGER R. LITTLE and TAMMY JONES,  :
                                              :
    Respondents.                           :

## VERIFICATION

Before me, the undersigned attesting officer authorized to administer oaths, personally

appeared **MARK DOUGLAS FAUL** who, being duly sworn, verifies that the information set

forth in the **APPEAL IN THE FORM OF PETITION FOR DE NOVO REVIEW TO**

**SUPERIOR COURT OF A ZONING DECISION AND COMPLAINT AND REQUEST**

**FOR DECLARATORY JUDGMENT INJUNCTION AND OTHER RELIEF** are true and

correct to the best of his knowledge.

This _12_ day of _November_, 2024.

_Mark Douglas Faul_

Sworn to and subscribed before me
this _10th_ day of _November_, 2024.

_Notary Public_
My comm. expires: _10 22 2026_

DOMINO M SAPP
Notary Public - State of Georgia
Gwinnett County
My Commission Expires Oct 22, 2026

**General Civil and Domestic Relations Case Filing Information Form**

⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**

JASON J. DEAL

NOV 12, 2024 04:59 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

☑ **Superior** or ☐ **State Court of** _Hall_ _____ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** _11-12-2024_ <br> **MM-DD-YYYY** | **Case Number** _2024CV002062_ |

**Plaintiff(s)**

Arrowquest Services, Inc.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Faul, Mark Douglas | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Conoly, Erik | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Phillips, Jamie | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

Hall County and the Hall County Board of Commi

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Higgins, Richard | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Powell, Billy | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Poole, Gregg | | | | |

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** _Cummings, Mr. Michael H. II_    **Bar Number** _201711_    **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

☐ Automobile Tort
☑ Civil Appeal
☐ Contract
☐ Contempt/Modification/Other Post-Judgment
☐ Garnishment
☐ General Tort
☐ Habeas Corpus
☐ Injunction/Mandamus/Other Writ
☐ Landlord/Tenant
☐ Medical Malpractice Tort
☐ Product Liability Tort
☐ Real Property
☐ Restraining Petition
☐ Other General Civil

**Domestic Relations Cases**

☐ Adoption
☐ Contempt
    ☐ Non-payment of child support, medical support, or alimony
☐ Dissolution/Divorce/Separate Maintenance/Alimony
☐ Family Violence Petition
☐ Modification
    ☐ Custody/Parenting Time/Visitation
☐ Paternity/Legitimation
☐ Support – IV-D
☐ Support – Private (non-IV-D)
☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                     **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

⚖ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
**JASON J. DEAL**
**NOV 12, 2024 04:59 PM**

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

CIVIL ACTION NUMBER  2024CV002062

Arrowquest Services, Inc., DBA d/b/a
Mulberry Springs Vineyard and Winery
Faul, Mark Douglas
Conoly, Erik
Phillips, Jamie
Melendez, Jared
Melendez, Katie Maureen
Morton, Mike
Morton, Lisa
Doucher, William
Doucher, Emily
Graff, Jim
Graff, Laura
Winslow, Nancy
Channell, Tommy
Channell, Leslie
Downey, Wayne
Downey, Carole
Black, Brett
Black, Jan
Cesak, Bret
Cesak, Amber
Branum, Carole
Everett, Greg
Everett, Kathy
Tule, Ben
Horsley, Doug
Terrell, Jake
Terrell, Heather
Pimentel, Walt
Pimentel, Whitney

_____

**PLAINTIFF**

**VS.**

Hall County and the Hall County Board of
Commissioners
Higgins, Richard
Powell, Billy
Poole, Gregg
Stowe, Jeff
Cooper, Kathy
Garmon, Beth
Stanley, Buddy
Stanley, Gloria

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

Jones, Randy
Little, Travis Lee
Little, Roger
Little, Cathy
Little, Roger R
Jones, Tammy

**DEFENDANTS**

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: HALL COUNTY AND THE HALL COUNTY BOARD OF COMMISSIONERS

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: JONES, TAMMY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: LITTLE, ROGER R

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: LITTLE, CATHY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

_____
Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

## SUMMONS

TO: LITTLE, ROGER

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: LITTLE, TRAVIS LEE

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: JONES, RANDY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: STANLEY, GLORIA

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

_Charles Baker_
_____
Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: STANLEY, BUDDY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: COOPER, KATHY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

_Charles Baker_

Charles Baker, Clerk
Hall County, Georgia

Page 3 of 3

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: STOWE, JEFF

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

### SUMMONS

TO: POOLE, GREGG

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: POWELL, BILLY

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Michael H. Cummings, II**
> **Michael H. Cummings II, LLC**
> **P.O. Box 1568**
> **Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
# STATE OF GEORGIA

**SUMMONS**

TO: HIGGINS, RICHARD

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

# SUPERIOR COURT OF HALL COUNTY
## STATE OF GEORGIA

### SUMMONS

TO: GARMON, BETH

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Michael H. Cummings, II**
**Michael H. Cummings II, LLC**
**P.O. Box 1568**
**Clayton, Georgia 30525**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 12th day of November, 2024.**

Clerk of Superior Court

Charles Baker, Clerk
Hall County, Georgia

STATE COURT OF CLAYTON CO., COVINGTON, GA 30015

Civil Action No. **2024CV002062**

Date Filed **11-12-24**

| | | |
|---|---|---|
| Superior Court | ☒ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |

CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

Georgia, **HALL** County

**2024CV002062**
**JASON J. DEAL**
**NOV 25, 2024 11:16 AM**

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

**Attorney's Address**

Michael H. Cummings, II
P.O. Box 1568
Clarkton, GA 30525

**MARK DOUGLAS FAUL, et al**

Plaintiff

VS.

**Name and Address of Party to be Served.**

Hall County and the Hall County
Board of Commissioners
c/o William J. Linkous, III, County Attorney
2875 Browns Bridge Road
Gainesville, Georgia 30503

* Served w/ Summons, Appeal/Petition
for De Novo Review to Superior Court of a Zoning Decision
and Complaint and Request for Declaratory Judgment, Injunction, Damages, and other Relief, Verification

**HALL COUNTY and THE HALL**
**COUNTY BOARD OF COMMISSIONERS, et al**

Defendant

Garnishee

**SHERIFF'S ENTRY OF SERVICE**

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☒

Served the defendant **Hall Co. Commissioners** a corporation
by leaving a copy of the within action and summons with **Justin Carlton**
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This **18** day of **NOV**, 20 **24**.

11/18/24

88¢
11/19
89203

**DEPUTY**

SHERIFF DOCKET_____ PAGE _____

**WHITE-CLERK     CANARY-PLAINTIFF     PINK-DEFENDANT**

SHERIFF'S ENTRY OF SERVICE                          SC-85-2                          CLYDE CASTER _____ 2015

Civil Action No. _2024 CV 002062_

Date Filed _11-12-2024_

Attorney's Address

**Michael H. Cummings II, LLC**
**Attorney at Law**
**P.O. Box 1568**
**Clayton, GA 30525**

Name and Address of Party to be Served.

_Jeff Stowe, Board Member of the_
_Hall County Comissioners_
_c/o William J. Linkous III, County Attorney_
_2875 Browns Bridge Road_
_Gainesville, GA 30503_

| Superior Court | ☑ |
| State Court | ☐ |
| Juvenile Court | ☐ |
| Magistrate Court | ☐ |
| Probate Court | ☐ |

Georgia, _Hall_ COUNTY

FILED IN OFFICE
CLERK SUPERIOR COURT
GEORGIA

2024CV002062

JASON J. DEAL
NOV 25, 2024 01:15 AM

Charles Baker
Charles Baker, Clerk
Hall County, Georgia

_Mark Douglas Faul, et al_
                                                    Plaintiff

VS.

_Hall County and the Hall County_
_Board of Commissioners, et al_
                                                    Defendant

_____
                                                    Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons. _Summons, Appeal/Petition for De Novo Review to Superior Court of a Zoning Decision and Complaint and Request for Declaratory Judgment Injunction, Damages and other Relief._

**NOTORIOUS** ☐
I have this day served the defendant _Jeff Stowe BoC_ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Justin Lawson County Attorney_ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐
Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _18_ day of _Nov_, 20 _24_.

_11/18/24_                                          _89199_
                                                    DEPUTY

SHERIFF DOCKET_____ PAGE _____

SHERIFF'S ENTRY OF SERVICE                          SC-85-2                          CLYDE CASTLEBERRY CO., COVINGTON, GA 30015

| | | |
|---|---|---|
| Civil Action No. _2024 CV 002062_ | Superior Court ☑ | **E-FILED IN OFFICE** |
| | State Court ☐ | CLERK OF SUPERIOR COURT |
| Date Filed _11-12-2024_ | Juvenile Court ☐ | Probate Court ☐ GEORGIA |
| | Georgia, _HALL_ | **2024CV002062** |
| | | **JASON J. DEAL** |
| | | **NOV 25, 2024 11:16 AM** |

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

Attorney's Address

**Michael H. Cummings II, LLC**
Attorney at Law
P.O. Box 1568
Clayton, GA 30525

_Mark Douglas Faul, et al._

Plaintiff

VS.

Name and Address of Party to be Served.

_Gregg Poole, Board Member of the_
_Hall County Commissioners_
_c/o William J. Linkous III, County Attorney_
_2875 Browns Bridge Road_
_Gainsville, GA 30503_

_Hall County and the Hall County_
_Board of Commissioners, et al_

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐
I have this day served the defendant _____ personally with a copy of the within action and summons. _Summons, Appeal, Petition for De Novo Review to Superior Court of a Zoning Decision and Complaint and Request for Declaratory Judgment, Injunctions, Damages and other Relief, and Verification._

**NOTORIOUS** ☑
I have this day served the defendant _Gregg Poole_ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Justin Walker County Attorney_ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐
Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐
I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐
Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _18_ day of _Nov_, 20 _24_

_K. Thad 8841_
_89200_

DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

SHERIFF'S ENTRY OF SERVICE                SC-85-2                CLYDE CASTLEBERRY CO., COVINGTON, GA 30015

Civil Action No. _2024-CV-002062_

Date Filed _11-12-2024_

| | |
|---|---|
| Superior Court | ☒ |
| State Court | ☐ |
| Juvenile Court | ☐ |

Georgia, _HALL_ COUNTY

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
JASON J. DEALTY

NOV 25, 2024 11:16 AM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

Attorney's Address

Michael H. Cummings II, LLC
Attorney at Law
P.O. Box 1568
Clayton, GA 30525

Name and Address of Party to be Served.

_Billy Powell, Board Member of the_
_Hall County Commissioners_
_c/o William J. Linkous III, County Attorney_
_2875 Browns Bridge Road_
_Gainesville, GA 30503_

_Mark Douglas Faul, et al_

Plaintiff

VS.

_Hall County and The Hall County_
_Board of Commissioners, et al_

Defendant

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐  I have this day served the defendant _____ personally with a copy of the within action and summons. _Summons, Appeal/Petition for DeNovo Review to Superior Court of a Zoning Decision and Complaint and Request for Declaratory Judgment, Injunction, Damages and other relief, and Verification_

**NOTORIOUS** ☐  I have this day served the defendant _Billy Powell Bell_ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Justin Lawson County Attorney_ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐  Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐  I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐  Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _18_ day of _Nov_, 20 _24_.

_11/18/24_        _889_        _____ _5891_
                  _11/19_                                    _89201_

DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

SHERIFF'S ENTRY OF SERVICE                                    SC-85-2

Civil Action No. _2024-CV-002062_

Date Filed _11-12-2024_

| | |
|---|---|
| Superior Court | ☒ |
| State Court | ☐ |
| Juvenile Court | ☐ |
| Magistrate Court | ☐ |
| Probate Court | ☐ |

Georgia, _HALL_

OFFICE OF THE CASTLEBERRY CO., COVINGTON, GA 30015

FILED OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA
2024CV002062
JASON J. COUNTY
NOV 25, 2024 11:16 AM
Charles Baker, Clerk
Hall County, Georgia

**Attorney's Address**

Michael H. Cummings II, LLC
Attorney at Law
P.O. Box 1568
Clayton, GA 30525

_Mark Douglas Farl, et al_

Plaintiff

VS.

_Hall County and the Hall County_
_Board of Commissioners, et al_

Defendant

Name and Address of Party to be Served.

_Kathy Cooper, Board Member of the_
_Hall County Commissioners_
_c/o William J. Linkous III, County Attorney_
_2875 Browns Bridge Road_
_Gainesville, GA 30503_

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons. _Summons, Appeal/Petition for De Novo Review to Superior Court of a Zoning Decision and Complaint and Request for Declaratory Judgment Injunction Damages and other Relief, and Verification_

**NOTORIOUS** ☒ I have this day served the defendant _Kathy Cooper Bd_ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Justine R Caurhen Contypd/Paralegal_ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST.** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _18_ day of _NOV_, 20 _24_

_11/18/24_

_89205_

DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

SHERIFF'S ENTRY OF SERVICE                                  SC-85-2

CLYDE CASTLEBERRY CLERK 2015
FILED IN OFFICE

Superior Court ☑          CIVIL SUPERIOR COURT
State Court ☐             Magistrate Court
Juvenile Court ☐          Probate Court        GEORGIA ☐

Civil Action No. _2024 CV 002062_

Date Filed _11-12-2024_

**2024CV002062**
**JASON J. DEAL**
Georgia, _HALL_        **NOV 25, 2024   10:11 AM   COUNTY**

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

Attorney's Address

**Michael H. Cummings II, LLC**
**Attorney at Law**
**P.O. Box 1568**
**Clayton, GA 30525**

_Mark Douglas Faul, et al_

Plaintiff

VS.

Name and Address of Party to be Served.

_Richard Higgins Chairperson of the_
_Hall County Commissioners_
_c/o William J. Linkous III, County Atty_
_2875 Browns Bridge Road_
_Gainesville, GA 30503_

_Hall County, and the Hall County_
_Board of Commissioners, et al_

Defendant

Garnishee

**SHERIFF'S ENTRY OF SERVICE**

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy
of the within action and summons.

_Summons, Appeal/Petition for DeNovo Review to Superior Court of a Zoning Decision and_
_Complaint and Request for Dee 2rato Judgment Injunction, Damages & Other Relief_

I have this day served the defendant _Verification s G_ BOC _____ by leaving a

**NOTORIOUS** ☑

copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _Justin Gardner County Attorny_ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of

defendant. _____

**CORPORATION** ☐

Served the defendant _____ a corporation

by leaving a copy of the within action and summons with _____

in charge of the office and place of doing business of said Corporation in this County.

_____

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

_____

**NON EST** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

This _18_ day of _Nov_ , 20 _24_ .

_11/18/24_                    _11/19_    _8897_    _____ 8897

_89202_

**DEPUTY**

SHERIFF DOCKET_____ PAGE _____

Civil Action No. _2024-CV-002062_

Date Filed _11-12-2024_

| Superior Court | ☑ |
| State Court | ☐ |
| Juvenile Court | ☐ |

Georgia, _HALL_

Attorney's Address

Michael H. Cummings II, LLC
Attorney at Law
P.O. Box 1568
Clayton, GA 30525

Name and Address of Party to be Served.

_Beth Garman, Director of Planning_
_& Zoning of Hall County_
_℅ William J. Linkous III, County Atty_
_2875 Browns Bridge Road_
_Gainsville, GA 30503_

Magistrate Court ☐
Probate Court ☐
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA
2024CV002062
JASON J. DEAL
NOV 25, 2024 11:16 AM
Charles Baker
Charles Baker, Clerk
Hall County, Georgia

Plaintiff _Mark Douglas Farmer_

VS.

Defendant _Hall County and the Hall County_
_Board of Commissioners, et al._

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☑

I have this day served the defendant _Beth Garman_ personally with a copy of the within action and summons. _Summons, Appeal Petition for De Novo Review to Superior Court of a Zoning Decision and Complaint & Request for Declaratory Judgment, Injunction, Damages, and Other Relief and Verification_

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐

Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _18_ day of _Nov_, 20 _24_.

_11/18/24_                _11/18_    _89204_    DEPUTY

SHERIFF DOCKET _____ PAGE _____

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
JASON J. DEAL
DEC 10, 2024 03:38 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

## IN THE SUPERIOR COURT OF HALL COUNTY
## STATE OF GEORGIA

MARK DOUGLAS FAUL,                      :
ARROWQUEST SERVICES, Inc.,              :
d/b/a MULBERRY SPRINGS                  :
VINEYARD AND WINERY, ERIK               :
CONOLY, JAMIE PHILLIPS, JARED           :
MELENDEZ, KATIE MAUREEN                 :
MELENDEZ, MIKE MORTON, LISA             :
MORTON, WILLIAM DOUCHER, EMILY          :
DOUCHER, JIM GRAFF, LAURA GRAFF,        :
NANCY WINSLOW, TOMMY                     :
CHANNELL, LESLIE CHANNELL,              :
WAYNE DOWNEY, CAROLE DOWNEY,            :
BRETT BLACK, JAN BLACK, BRET            :
CESAK, AMBER CESAK, CAROLE              :
BRANUM, GREG EVERETT, KATHY             :
EVERETT, BEN TULE, DOUG HORSLEY,        :
JAKE TERRELL, HEATHER TERRELL,          :
WALT PIMENTEL and WHITNEY               :
PIMENTEL,                               :
                                        :
         Petitioners,                   :
                                        :
                                        :    Civil Action File No.   **2024CV002062**
                                        :
HALL COUNTY AND THE HALL                :
COUNTY BOARD OF COMMISSIONERS,          :
RICHARD HIGGINS AS CHAIRPERSON,         :
AND BILLY POWELL, GREGG POOLE,          :
AND JEFF STOWE IN THEIR OFFICIAL        :
CAPACITIES, KATHY COOPER                :
AS MEMBERS OF THE                       :
HALL COUNTY COMMISSION, AND             :
BETH GARMON ON HER CAPACITY             :
AS DIRECTOR OF PLANNING AND             :
ZONING OF HALL COUNTY, GEORGIA,         :
AND BUDDY STANLEY, GLORIA STANLEY,      :
RANDY JONES, TRAVIS LEE LITTLE,         :
ROGER LITTLE, CATHY LITTLE,             :
ROGER R. LITTLE and TAMMY JONES,        :
                                        :
         Respondents.                   :

---

## ACKNOWLEDGMENT OF SERVICE

COME NOW, **Defendants, Buddy Stanley, Gloria Stanley, Randy Jones, Travis Lee**

Page 1 of  2

**Little, Roger Little, Cathy Little, and Tammy Jones,** by and through their attorney and

acknowledges service of process and receipt of a copy of the **Summons, Appeal/Petition for De**

**Novo Review to Superior Court of a Zoning Decision and Complaint and Request for**

**Declaratory Judgment Injunction, Damages, and other relief, and the Verification of Mark**

**Douglas Faul** filed in the above action. All other and further service is hereby waived.

The Clerk of the Superior Court of Rabun County and counsel of any other parties to this

action shall serve the undersigned on behalf of the parties named herein.

This the 10ᵈ day of December, 2024.

_____

Steven P. Gilliam
Smith Gilliam Williams & Miles PA
Attorney for Defendants, Buddy Stanley, Gloria
Stanley, Randy Jones, Travis Lee Little, Roger
Little, Cathy Little, and Tammy Jones
Georgia State Bar No. 294950

*Prepared by:*
*Michael H. Cummings II, LLC*
*Attorney at Law*
*P.O. Drawer 1568*
*Clayton, Georgia 30525*
*(706) 782-9297 - Office*
*(706) 782-0866 - Facsimile*

**IN THE SUPERIOR COURT OF HALL COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| MARK DOUGLAS FAUL,<br>ARROWQUEST SERVICES, Inc.,<br>d/b/a MULBERRY SPRINGS<br>VINEYARD AND WINERY, ERIK<br>CONOLY, JAMIE PHILLIPS, JARED<br>MELENDEZ, KATIE MAUREEN<br>MELENDEZ, MIKE MORTON, LISA<br>MORTON, WILLIAM DOUCHER, EMILY<br>DOUCHER, JIM GRAFF, LAURA GRAFF,<br>NANCY WINSLOW, TOMMY<br>CHANNELL, LESLIE CHANNELL,<br>WAYNE DOWNEY,CAROLE DOWNEY,<br>BRETT BLACK, JAN BLACK, BRET<br>CESAK, AMBER CESAK, CAROLE<br>BRANUM, GREG EVERETT, KATHY<br>EVERETT, BEN TULE, DOUG HORSLEY,<br>JAKE TERRELL, HEATHER TERRELL,<br>WALT PIMENTEL and WHITNEY<br>PIMENTEL, | : : : : : : : : : : : : : : : : : : : : : : | |
| Petitioners, | : : | |
| | : : | Civil Action File No. __2024CV002062__ |
| HALL COUNTY AND THE HALL<br>COUNTY BOARD OF COMMISSIONERS,<br>RICHARD HIGGINS AS CHAIRPERSON,<br>AND BILLY POWELL, GREGG POOLE,<br>AND JEFF STOWE IN THEIR OFFICIAL<br>CAPACITIES, KATHY COOPER<br>AS MEMBERS OF THE<br>HALL COUNTY COMMISSION, AND<br>BETH GARMON ON HER CAPACITY<br>AS DIRECTOR OF PLANNING AND<br>ZONING OF HALL COUNTY, GEORGIA,<br>AND BUDDY STANLEY, GLORIA STANLEY,<br>RANDY JONES, TRAVIS LEE LITTLE,<br>ROGER LITTLE, CATHY LITTLE,<br>ROGER R. LITTLE and TAMMY JONES, | : : : : : : : : : : : : : : : : : | |
| Respondents. | : : | |

## CERTIFICATE OF SERVICE

This is to certify that on the 10th day of December, 2024, I served a copy of the

Page 3 of 4

foregoing on the following counsel and/or parties in this matter via electronic mail service:

Michael H. Cummings II, LLC
Attorney at Law
P.O. Drawer 1568
Clayton, Georgia 30525

*/s/ Steven P. Gilliam*
Steven P. Gilliam, Attorney
Georgia Bar No. 294950

⏛ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**

JASON J. DEAL
DEC 12, 2024 04:18 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

# IN THE SUPERIOR, STATE, COURT OF APPEALS, U.S. DISTRICT, CIVIL, PROBATE, JUVENILE AND MAGISTRATE COURTS OF GEORGIA

To:     All Judges, Clerks of Court and Counsel of Record
From:  Michael H. Cummings II
RE:     Leave of Absence

COMES NOW, Michael H. Cummings II and respectfully notifies all Judges before whom he has cases pending ( See Exhibit "A" ), all affected Clerks of Court, all opposing counsel and pro se parties, that pursuant to Georgia Uniform Court Rule 16, he will be on leave from the practice of law for a family vacation as follows:

August 28 - August 30, 2024 - Family Leave
October 7 - October 11, 2024- Family Leave
October 30 - November 11, 2024 - Hunting Trip
November 25 - November 29, 2024 - Thanksgiving Holiday
December 23, 2024 - January 3, 2025 - Christmas Holidays

All Judges, Counsel and Pro Se parties shall have ten days (10) days from the date of this notice to object to the proposed leave. If no objections are filed, the leave shall be granted.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **NOTICE OF LEAVE OF ABSENCE** was served upon all Judges, Clerks, Opposing Counsel and Pro Se parties involved in the cases listed in Exhibit "A" attached hereto, via U.S. Mail with adequate postage to insure proper delivery.

Respectfully submitted this 12th day of December, 2024.

_____
Michael H. Cummings II
State Bar No. 201711

*Michael H. Cummings II, LLC*
*Attorney at Law*
*102 Dotson Street*
*P.O. Drawer 1568*
*Clayton, Georgia 30525*
*(706)782-9297 - Office*
*(706)782-0866 - Facsimile*

# EXHIBIT "A"

| Case Style/Number | Judge/County/Court | Opposing Counsel/Party |
|---|---|---|
| Mark Douglas Faul, et al v. Hall County and the Hall County Board of Commissioners, et al<br>Civil Action File No. 2024CV002062 | Honorable Jason J. Deal<br>Hall Superior Court | Steven P. Gilliam |

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
**JASON J. DEAL**
DEC 16, 2024 03:52 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

IN THE SUPERIOR COURT OF HALL COUNTY
STATE OF GEORGIA

MARK DOUGLAS FAUL,                         :
ARROWQUEST SERVICES, Inc.,                 :
d/b/a MULBERRY SPRINGS                      :
VINEYARD AND WINERY, ERIK                  :
CONOLY, JAMIE PHILLIPS, JARED              :
MELENDEZ, KATIE MAUREEN                    :
MELENDEZ, MIKE MORTON, LISA                :
MORTON, WILLIAM DOUCHER, EMILY             :
DOUCHER, JIM GRAFF, LAURA GRAFF,           :
NANCY WINSLOW, TOMMY                       :
CHANNELL, LESLIE CHANNELL,                 :
WAYNE DOWNEY,CAROLE DOWNEY,                :
BRETT BLACK, JAN BLACK, BRET               :
CESAK, AMBER CESAK, CAROLE                 :
BRANUM, GREG EVERETT, KATHY                :
EVERETT, BEN TULE, DOUG HORSLEY,:
JAKE TERRELL, HEATHER TERRELL,             :
WALT PIMENTEL and WHITNEY                   :
PIMENTEL,                                   :
                                            :
        Petitioners,                        :
                                            :
                                            :     Civil Action File No.  2024CV002062
                                            :
HALL COUNTY AND THE HALL                   :
COUNTY BOARD OF COMMISSIONERS,:
RICHARD HIGGINS AS CHAIRPERSON,            :
AND BILLY POWELL, GREGG POOLE,             :
AND JEFF STOWE IN THEIR OFFICIAL           :
CAPACITIES, KATHY COOPER                    :
AS MEMBERS OF THE                           :
HALL COUNTY COMMISSION, AND                :
BETH GARMON ON HER CAPACITY                :
AS DIRECTOR OF PLANNING AND                :
ZONING OF HALL COUNTY, GEORGIA, :
AND BUDDY STANLEY, GLORIA STANLEY,:
RANDY JONES, TRAVIS LEE LITTLE,            :
ROGER LITTLE, CATHY LITTLE,                :
ROGER R. LITTLE and TAMMY JONES,  :
                                            :
        Respondents.                        :

**DISMISSAL OF NAMED DEFENDANT, "ROGER R. LITTLE"**

**AND DISMISSAL OF CLAIMS AGAINST DEFENDANT, "ROGER R. LITTLE"
WITHOUT  PREJUDICE**

    **COMES NOW,** Plaintiffs  in the above styled  action, and dismiss Defendant, "Roger R.

Little" as a named defendant in this case and  also dismiss their claims in the above-referenced

case without prejudice against Defendant, "Roger R. Little," due to him being erroneously listed

in a previously submitted Zoning Application that Plaintiff's obtained their information from.

                    This the ___16th___ day of December, 2024.

                    _____

                    Michael H. Cummings II
                    Attorney for Plaintiffs
                    State Bar No. 201711

*Michael H. Cummings II, LLC*
*Attorney at Law*
*P. O. Drawer 1568*
*Clayton, Georgia  30525*
*(706) 782-9297 - Office*

✦ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2024CV002062**
**JASON J. DEAL**
DEC 16, 2024 03:52 PM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

## IN THE SUPERIOR COURT OF HALL COUNTY
## STATE OF GEORGIA

MARK DOUGLAS FAUL,                              :
ARROWQUEST SERVICES, Inc.,                      :
d/b/a MULBERRY SPRINGS                          :
VINEYARD AND WINERY, ERIK                       :
CONOLY, JAMIE PHILLIPS, JARED                   :
MELENDEZ, KATIE MAUREEN                         :
MELENDEZ, MIKE MORTON, LISA                     :
MORTON, WILLIAM DOUCHER, EMILY                  :
DOUCHER, JIM GRAFF, LAURA GRAFF,                :
NANCY WINSLOW, TOMMY                            :
CHANNELL, LESLIE CHANNELL,                      :
WAYNE DOWNEY,CAROLE DOWNEY,                     :
BRETT BLACK, JAN BLACK, BRET                    :
CESAK, AMBER CESAK, CAROLE                      :
BRANUM, GREG EVERETT, KATHY                     :
EVERETT, BEN TULE, DOUG HORSLEY,:
JAKE TERRELL, HEATHER TERRELL,                  :
WALT PIMENTEL and WHITNEY                       :
PIMENTEL,                                       :
                                                :
         Petitioners,                           :
                                                :   Civil Action File No.  2024CV002062
                                                :
                                                :
HALL COUNTY AND THE HALL                        :
COUNTY BOARD OF COMMISSIONERS,:
RICHARD HIGGINS AS CHAIRPERSON,                 :
AND BILLY POWELL, GREGG POOLE,                  :
AND JEFF STOWE IN THEIR OFFICIAL                :
CAPACITIES, KATHY COOPER                        :
AS MEMBERS OF THE                               :
HALL COUNTY COMMISSION, AND                     :
BETH GARMON ON HER CAPACITY                     :
AS DIRECTOR OF PLANNING AND                     :
ZONING OF HALL COUNTY, GEORGIA,                 :
AND BUDDY STANLEY, GLORIA STANLEY,
RANDY JONES, TRAVIS LEE LITTLE,                 :
ROGER LITTLE, CATHY LITTLE,                     :
ROGER R. LITTLE and TAMMY JONES,                :
                                                :
         Respondents.                           :

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs, in the above case, hereby certifies that a copy of the **DISMISSAL OF NAMED DEFENDANT, "ROGER R. LITTLE" AND DISMISSAL OF CLAIMS AGAINST DEFENDANT, "ROGER R. LITTLE" WITHOUT PREJUDICE** was this day served by sending a copy of same in the United States mail in an envelope properly addressed with adequate postage thereon to ensure proper delivery to:

Steven P. Gilliam
Smith, Gilliam, Williams & Miles, P.A.
P.O. Box 1098
Gainesville, GA 30501

and have electronically filed this document with the Clerk of Court using the PeachCourt system which will automatically send email notification of the filing to the attorney of records.

This 16 day of December, 2024.

Michael H. Cummings II
Attorney for Plaintiffs
State Bar No. 201711

*Michael H. Cummings II, LLC*
*Attorney at Law*
*P.O. Drawer 1568*
*Clayton, Georgia 30525*
*(706) 782-9297 - Office*
*(706) 782-0866 - Facsimile*